RIDDELL

v.

NATIONAL DEMOCRATIC PARTY

v.

WALLER, GOVERNOR OF STATE OF MISSISSIPPI.

Civ. A. No. J72–74(R).

United States District Court,
S. D. Mississippi,
Jackson District.

July 31, 1982.

See also, D.C., 344 F.Supp. 908.

George F. Woodliff, Curtis E. Coker, Jackson, Miss., J. Walter Brown, Jr., Natchez, Miss., for plaintiff.

Charles Morgan, Jr., Washington, D.C., Neil Bradley and Morris Brown, ACLU Foundation, Inc., Atlanta, Ga., Emily Calhoun, Boulder, Colo., Norman Siegel, New York City, Frank R. Parker, John C. Brittain, Jr., Lawyers Committee for Civil Rights, Jackson, Miss., Joseph A. Califano, Jr. and Earl C. Dudley, Jr., Washington, D. C., William Allain, Jr., Atty. Gen., Peter M. Stockett, Jr., Asst. Atty. Gen., Jackson, Miss., for defendants.

## OPINION

DAN M. RUSSELL, Jr., Chief Judge.

This matter is before the Court on the Loyalists' Motion for Costs and Attorneys' Fees pursuant to 42 U.S.C. § 1988. In *Riddell v. National Democratic Party*, 624 F.2d 539 (5th Cir. 1980), the Fifth Circuit Court of Appeals determined that the Loyalists

prevailed on the central issue in this litigation when the state exclusive registration statute, Miss.Code Ann. § 23–1–5 (1972), was declared unconstitutional. As prevailing parties, the Loyalists and National party are entitled to an award of attorneys' fees under section 1988.

This Court, under the remand from the Fifth Circuit, is required to calculate an award of attorneys' fees and costs pursuant to the guidelines announced in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). Further, this Court must devise an equitable plan for allocating payment of the award between the Regular party officers and the state officials. The Fifth Circuit directed that at least a partial fee award should be imposed on the governor, secretary of state, and the attorney general in their official capacities as the parties responsible for enforcement of the unconstitutional statute against the Loyalists. As against the Regulars, the Fifth Circuit in *Riddell* concluded that the effect of a fee award in this case would be to create a debt of the former Regular faction that will be assumed by the unified party and paid from unified party funds.

## JOHNSON FACTORS

 In awarding statutorily authorized attorneys' fees in this circuit, the district courts must follow the guidelines set forth by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Copeland v. Marshall*, 641 F.2d 880, 883 (D.C.Cir.1980); *Copper Liquors v. Adolph Coors Co.*, 624 F.2d 575, 581 (5th Cir. 1980). What is required of the district court

"... is not a meaningless exercise in parroting and answering of *Johnson's* twelve criteria, but some assurance that the court has arrived at a just compensation based on appropriate standards." *Copper Liquors v. Adolph Coors Co.*, 624 F.2d at 581.

The district judge must "explain the findings and reasons upon which the award is based, including an indication of how each of the twelve factors in *Johnson* affected his decision." *Id.* Essentially the district court must ascertain the nature and extent of the services rendered by the attorney and value these services according to the customary fee and quality of work. *Copper Liquors v. Adolph Coors Co.*, 624 F.2d at 583; *Matter of First Colonial Corp. of America*, 544 F.2d 1291, 1299–1300 (5th Cir. 1977). Finally, the court should adjust the compensation on the basis of other *Johnson* factors. *Id.*

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974) directs that the district court must consider the following factors in calculating an award of attorneys' fees: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[1] The Fifth Circuit has repeatedly insisted that the *Johnson* factors control the district courts' computation of attorneys' fees. Although these criteria remain central to any fee determination, we conclude that the consideration of these factors, without more, cannot guarantee a rational, reasonable setting of fees. *See Copeland v. Marshall*, 641 F.2d 880, 890 (D.C.Cir.1980) (en banc).

"The fundamental problem with an approach that does no more than assure

---

1. In *Copper Liquors v. Adolph Coors Co.*, 624 F.2d 575, 583 (5th Cir. 1980), the Fifth Circuit noted that recent decisions suggest that the district courts in computing fees, pay special heed to *Johnson* factors numbers (1) time and labor involved; (5) the customary fee; (8) the amount involved and the results obtained; and (9) the experience, reputation, and ability of counsel.

that the lower courts will consider a plethora of conflicting and at least partially redundant factors is that it provides no analytical framework for their application. It offers no guidance on the relative importance of each factor, whether they are to be applied differently in different contexts, or, indeed, how they are to be applied at all." *Copeland v. Marshall*, 641 F.2d at 890.

District judges, for this reason, have had difficulty applying the *Johnson* factors. *Id.*

In search of guidance regarding the application of the twelve *Johnson* factors, this Court turns to the District of Columbia Court of Appeals wherein these twelve factors have been utilized and expounded upon. We refer to the cases of *Copeland v. Marshall*, 641 F.2d 880 (D.C.Cir.1980) (en banc); *Donnell v. United States*, 240 F.2d 682 (D.C.Cir. 1982); and *National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1323 (D.C.Cir.1982).

■■■ The initial task in determining an appropriate fee award is to establish the "lodestar" which is calculated by multiplying a reasonable hourly rate by the number of hours reasonably expended on the lawsuit. *Copeland v. Marshall*, 641 F.2d at 890–91; *National Ass'n of Concerned Veterans v. Secretary of Defense*, at 1323; *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3rd Cir. 1973); *Lindy II*, 540 F.2d 102 (3d Cir. 1976) (en banc). The "lodestar", which provides a reasonably objective starting point for awarding fees, is the basis fee from which a trial judge should work. *Id.* Once established, the "lodestar" may be adjusted to reflect various other factors such as the contingent nature of the suit, the delay in the receipt of payment of attorneys' fees, and the quality of representation. *National Ass'n of Concerned Veterans v. Secretary of Defense*, at 1323; *Copeland v. Marshall*, 641 F.2d at 892–93.

## REASONABLE HOURLY RATE

■■■ The key issue in establishing the proper "lodestar" is to determine the reasonable hourly rate "prevailing in the com-

munity for similar work". *Donnell v. United States*, at 251; *National Ass'n of Concerned Veterans v. Secretary of Defense*, at 1324; *Copeland v. Marshall*, 641 F.2d at 892. The relevant "community" is the one in which the district court sits regardless of the fact that much work must be performed away from the district court's community or that high-priced attorneys come into jurisdictions with much lower market rates. *Donnell*, at 251–252. However, if a *particular* attorney's services are necessary and another attorney with the requisite skill is unavailable within the court's jurisdiction, then the proper hourly rate is that prevailing in that attorney's local community. *Id.; Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760 at 768 (7th Cir. 1982).

■■■ In order to establish the "prevailing rate in the community for similar work", a fee applicant is required to provide specific evidence of the prevailing community rate for the type of work for which he seeks an award. *National Ass'n of Concerned Veterans*, at 1325–1326.

"For example, affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases provide prevailing community rate information. On the other hand, generalized 'information and belief' affidavits from friendly attorneys presenting a wide range of hourly rates will not suffice. Recent fees awarded by the courts or through settlement to attorneys of comparable reputation and experience performing similar work are also useful guides in setting an appropriate rate." *Id.* & n.7.

Additionally, counsel for applicants should submit specific evidence of his or her actual billing practice during the relevant time period to bolster the applicant's evidence of the prevailing community rate. *Id.* This evidence of an attorney's actual billing practice should not be what he would have liked to receive an hour but what on average counsel has received. *Id.* at 1326.

■■■ In addition to the evidence of the prevailing community rate submitted to the

court by counsel, the court should consider the following in its determination of a reasonable hourly rate: (1) the level of skill necessary; (2) time limitations; (3) the amount to be obtained in the litigation; (4) the attorney's reputation; and (5) the undesirability of the case. *National Ass'n of Concerned Veterans*, at 1324; *Copeland v. Marshall*, 641 F.2d at 892. These factors and the evidence submitted by counsel should be of assistance to the court in determining a precise calculation of the reasonable hourly billing rate so that the court is able to discern the propriety of an adjustment. *National Ass'n of Concerned Veterans*, at 1326, n.9.

## HOURS REASONABLY EXPENDED

 An applicant for attorneys' fees is only entitled to an award for time reasonably expended. *National Ass'n of Concerned Veterans*, at 1326; *Copeland v. Marshall*, 641 F.2d at 891. The amount of time actually expended is not necessarily the amount of time reasonably expended. *Id.* Therefore, fee applications containing broad summaries of work done and hours logged will be rejected in favor of a sufficient detailing of work done and hours logged. *National Association of Concerned Veterans*, at 1326–1327.

> "Casual after-the-fact estimates of time expended on a case are insufficient to support an award of attorneys' fees. Attorneys who anticipate making a fee application must maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney." *Id.* at 1327.

Although the fee application need not detail the exact number of minutes spent nor the precise activity to which these hours are devoted, it must be sufficiently detailed so that the district court may make an independent determination whether the hours claimed are justified. *Id.* The District of Columbia Circuit suggests that

> "[t]he better practice is to prepare detailed summaries based on contemporaneous time records indicating the work performed by each attorney for whom fees

are sought." *National Ass'n of Concerned Veterans v. Secretary of Defense*, at 1327.

In *Environmental Defense Fund, Inc. v. EPA*, 672 F.2d 42 at 54 (D.C.Cir.1982), the Court awarded fees based on the following evidence in support of the hours claimed which was found to be more than adequate: (1) the daily time sheets for the attorneys; (2) written declarations from the attorneys describing the precise nature of the work performed by them, the hours attributed to each category of work, the approximate number of hours attributable to duplication or nonproductivity and the approximate dates for performance of these tasks; and (3) an affidavit describing the history of the litigation, the litigation goals and strategies, and the qualifications of each participating attorney.

 Fees are not recoverable for nonproductive time or for time spent on issues on which the plaintiff did not ultimately prevail. *National Ass'n of Concerned Veterans*, at 1327; *Copeland v. Marshall*, 641 F.2d at 891. However, no reduction in fees is appropriate where the "issue was all part and parcel of one matter", but only when the claims asserted "are truly fractionable." *Copeland*, 641 F.2d at 892 n.18 (quoting *Lamphere v. Brown University*, 610 F.2d 46, 47 (1st Cir. 1979)). The fee application should therefore indicate if nonproductive time or time spent on unsuccessful claims was excluded, and, if time was excluded, the nature of the work and the number of hours involved should be stated. *Id.* at 1327–1328.

## ADJUSTMENTS TO THE LODESTAR

Once the lodestar has been adequately documented, an adjustment of the lodestar may be appropriate to compensate for the risk that the lawsuit would be unsuccessful and result in no fee; to offset the delay in receipt of payment for services; and to reflect the unusually good or bad representation "taking into account the level of skill normally expected of an attorney commanding the hourly rate used to compute the 'lodestar'." *Id.* at 1328; *Copeland*, 641

F.2d at 892–94. The Court in *Copeland* emphasized that "[t]he burden of justifying any deviation from the 'lodestar' rests on the party proposing the deviation." *Id.* at 892.

■ The contingent nature of the suit will be reflected by an upward adjustment of the lodestar only if counsel would have received no significant remuneration if the suit were not successful. *National Ass'n of Concerned Veterans* at 1328; *Copeland*, 641 F.2d at 893. This contingency adjustment was designed solely to compensate attorneys for the risk of assuming the burden of potentially unsuccessful litigation. *Id.* This percentage increase is not based on the amount of recovery, *Copeland*, 641 F.2d at 893, but on the possibility that no fee will be obtained. *Id.*

■ The fact that the case was one of first impression or that it presented particularly difficult issues should not be included in considering the appropriateness of a contingency adjustment. *Donnell v. United States*, at 253. These factors will affect the number of hours reasonably expended on the case and the reasonable hourly rate and will properly appear in the lodestar calculation. *Id.* Further, to the extent that the hourly rate underlying the lodestar fee includes an allowance for the contingent nature of the availability of fees, no further adjustment duplicating that allowance should be made. *Copeland v. Marshall*, 641 F.2d at 893.

■ Once an applicant has established an entitlement to an adjustment based on the risk factor, he must provide specific support for the risk premium requested. *National Ass'n of Concerned Veterans*, at 1328. Although the District of Columbia Circuit recognized the inherent imprecision in setting a risk premium, it concluded that the difficulties of the task of the district court would be minimized by a fee application which clearly identifies the specific circumstances of the case supporting the risk adjustment percentage requested. *Id.* The Court suggested that the district court compute the "lodestar" without consideration of the risk factor which should be presented as a separate matter. *Id.*

■ Secondly, the "lodestar" may be adjusted upward to compensate counsel for the "lost value of the money he would have received resulting from delay in payment." *National Ass'n of Concerned Veterans*, at 1328; *Donnell v. United States*, at 254; *Copeland*, 641 F.2d at 893. However, if the "lodestar" itself is based on *present* hourly rates rather than the lesser rates applicable to the time period in which the services were rendered, then the harm resulting from a delay in payment may be largely reduced or eliminated. *Id.*

■ No precise formula exists for ascertaining the delay factor. *National Ass'n of Concerned Veterans*, at 1328. Some delay in receipt of payment is inevitable. *Id.* Therefore, any minimal delay may be ignored by the court in setting a fee award. *Id.* Moreover, any delay attributable to dilatory actions by plaintiff should be reflected by a downward adjustment. *Id.*

■ The third and final factor to be considered in adjusting the lodestar is the quality of representation. *National Ass'n of Concerned Veterans*, at 1328; *Donnell*, at 254; *Copeland*, 641 F.2d at 893. An adjustment based on this factor is only appropriate if the representation has been unusually good or bad "*taking into account the level of skill normally expected* of an attorney commanding the hourly rate used to compute the 'lodestar'." *Id.* The Court in *Copeland* emphatically stated that an adjustment for this factor should not be routinely awarded. 641 F.2d at 893. As stated in *Copeland*,

"... the court must recognize that a consideration of 'quality' inheres in the 'lodestar' award: counsel who possess or are reputed to possess more experience, knowledge and legal talent generally command hourly rates superior to those who are less endowed. *Thus, the quality of an attorney's work in general is a component of the reasonabl[e] hourly rate; this aspect of 'quality' is reflected in the 'lodestar' and should not be utilized

to augment or diminish the basic award under the rubric of 'the quality of an attorney's work.'" 641 F.2d at 893–94. [emphasis in original].

Any increase or decrease in fees to adjust for the quality of work is designed to take account of an *unusual* degree of skill, be it unusually good or bad. *Id.*

■ To establish an adjustment on this basis requires that the applicant specifically request such an adjustment and state why it is warranted. *National Ass'n of Concerned Veterans*, at 1328. If the district court concludes that the evidence indicates only one of several attorneys performed unusually well, then an adjustment should be made only for that attorney's lodestar figure. *Donnell v. United States*, at 255 n.49.

■ Challenges to an application for fees should be stated with specificity. *Id.* at 1328. A district court cannot inquire into the reasonableness of every action taken and every hour expended by counsel and will consider objections only where presented with a reasonable basis for believing the filing is excessive. *Id.* The burden of proof and the initial burden of proceeding is, of course, on the applicant and remains there throughout the proceedings. *National Ass'n of Concerned Veterans*, at 1337 (Tamm, J., concurring). The burden of proof is satisfied by the submission of an application supported by sufficiently detailed documentation. *Id.* Then the burden of proceeding shifts to the party opposing the fee application who must submit facts and detailed affidavits establishing the excessive nature of the fee applicant's request. *Id.* "[B]roadly based, ill-aimed attacks, [or] nit-picking claims" constituting a "blunderbuss attack" will not suffice. *Id.*

The Court in *National Ass'n of Concerned Veterans v. Secretary of Defense* outlined the appropriate time and procedure for filing discovery requests and requests for evidentiary hearings on the issue of attorneys' fees. *Id.* at 1329–1330. This Court previously entertained the Loyalists' motion for attorneys' fees which was denied by this Court and ultimately reversed. We will not burden the parties with further discovery and hearings on this matter since "the end of this protracted litigation finally is in sight, and we do not wish unnecessarily to prolong it when the only remaining issue is that of attorneys' fees." *Copeland v. Marshall*, 641 F.2d at 901.

The procedure outlined above will be utilized in calculating the fee award to be assessed herein. Merely following the *Johnson* checklist was not sufficient as many factors overlap and no guidance has been provided regarding the relative importance of each criteria. *See Northcross v. Board of Educ. of Memphis City Schools*, 611 F.2d 624, 642–43 (6th Cir. 1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980).

"We conclude that an analytical approach, grounded in the number of hours expended on the case, will take into account all the relevant factors [in *Johnson*], and lead to a reasonable result. The number of hours of work will automatically reflect the 'time and labor involved,' 'the novelty and difficulty of the question,' and 'preclusion of other employment.' The attorney's normal hourly billing rate will reflect 'the skill requisite to perform the legal service properly,' 'the customary fee,' and the 'experience, reputation and ability of the attorney.' Adjustments upward may be made to reflect the contingency of the fee, unusual time limitations and the 'undesirability' of the case. *Thus, applying [this] approach will result in an award reflecting those considerations traditionally looked to in making fee awards, but will also provide a logical, analytical framework which should largely eliminate arbitrary awards based solely on a judge's predispositions or instincts.*" 611 F.2d at 643. [emphasis added].

## FEE APPLICATION *SUB JUDICE*

■ In fixing the fee award, this Court is governed by the twelve factors set forth in *Johnson*. From this analysis of the case, we will determine the "lodestar" and the propriety of any adjustments thereto.

1. Counsel for the Loyalists have submitted detailed records in support of their claim for fees, extensively documenting the time expended and the expenses incurred in pursuit of their interests in this matter. This documentation revealed that counsel for the Loyalists devoted a total of 1185.15 hours to rendering legal services in connection with this case, broken down by the date the work was performed, the nature of the work performed, and the time expended for that work. The legal services rendered for which fees are sought are limited to time spent researching and preparing pleadings and briefs, drafting correspondence, conferences among the attorneys and clients, conducting hearings and discovery and other related matters. The Loyalists also request fees for time spent prior to filing of the complaint for twelve precinct election workshops which were conducted at various sites throughout the state (18 hours claimed); conferences devoted to scheduling, organization and coordination of these workshops (8 hours claimed); preparation of forms for the delegate selection process (8 hours claimed); and information-gathering of delegate selection results (20 hours claimed). The Loyalists also request time for twenty hours expended for gathering information for meeting sites and chair-persons and the preparation of the public notification. Fourteen hours are claimed for researching federal and state law and national party rules and regulations and the delegate apportionment formulas. Counsel also requests an allowance of nineteen hours for attendance at the Regulars' Convention and at the Loyalists' Convention. Although neither the Regulars nor the State of Mississippi made specific objections to the time requested prior to the filing of the complaint or to the time requested subsequent to the complaint except to say that the hours claimed are excessive, this Court concludes that the Loyalists may not recover for ninety-three hours expended prior to filing the complaint. The fourteen hours spent researching the law is compensable. Although we realize that compensable time should not be limited to the four corners of the litigation, *National Ass'n of Concerned*

*Veterans*, at 1335, there has been no showing that this time was expended in pursuit of a successful resolution of the case. *Id.* Indeed, these noncompensable activities precipitated the filing of this suit. Therefore, the number of compensable hours will be reduced by ninety-three.

We conclude that the 1092.15 hours expended by the Loyalists in this lawsuit is certainly reasonable. The Court has scrutinized the fee application and concludes that the time devoted to each matter is not unreasonable on its face. *See, e.g., Connor v. Winter*, 519 F.Supp. 1337 (S.D.Miss.1981) (1269.25 hours approved for fifteen-year reapportionment case). For instance, counsel claims only fifty-five hours for the research, writing and preparation of a ninety-page brief to the Fifth Circuit. Additionally, counsel opposite failed to assist the Court in any manner with their "blunderbuss" attack which stated no more than that the hours claimed were excessive. This type of objection to a fee application is wholly insufficient. Therefore, this Court concludes that counsel for the Loyalists actually expended the times itemized, that the times spent were all in furtherance of their clients' interest, and that they were reasonable and necessary for the discharge of their professional obligation. Thus, for the purposes of obtaining a "lodestar" figure, the number of hours reasonably expended is 1092.15.

2. According to the Fifth Circuit in *Riddell*, 508 F.2d 770, 772 (5th Cir. 1975), "[t]his case present[ed] serious issues concerning the operation of our political democracy." The Court therein declared the state's exclusive registration statute to be an impermissible burden on the ability of the Loyalists to organize and an unjust interference with the individual right to associate with the political party of one's choice. 508 F.2d at 777. While these issues of first and fourteenth amendment violations have not always been novel, they have indeed raised complex and difficult questions for the district court and the Fifth Circuit. Moreover, the Regulars and the State of Mississippi launched a vigorous attack on the ability of

the Loyalists to gain political standing in this state. The novelty and difficulty of this case further substantiates this Court's conclusion that 1092.15 hours is more than reasonable for a case of this magnitude.

3. Counsel for the Loyalists exhibited throughout the proceedings the requisite skill required for a case of this type. They performed ably on behalf of their clients, more than adequately demonstrating their special expertise in the matter of voting rights litigation. Their professional ability will be considered in determining the reasonable hourly rate.

4. It is well-established that civil rights cases of any type are now considered "undesirable". Therefore, little attention will be given to this factor except to note that this litigation was protracted and, at times, hard-fought. Of necessity, counsel for the Loyalists were precluded from accepting other employment. Their affidavit of the *Johnson* factors discusses this criteria with more specificity than we think necessary here.

5. Counsel for the Loyalists submitted affidavits and recent precedent to support their claim that $87.20 is a reasonable hourly rate for the Jackson, Mississippi area. We conclude that the rates in Jackson, Mississippi are applicable. Counsel began with a rate of $40 per hour in 1972 and included an inflation factor to arrive at an hourly rate of $87.20. *See* Fee Application at 53. Opposing counsel failed to submit any evidence that the fees in Jackson were lower than the requested rate. The Regulars and the State merely stated that the requested rate was excessive and that $50 per hour was appropriate. We conclude that an hourly rate of $87.20 is reasonable in light of the reputation and expertise of the attorneys herein. Counsel for the Loyalists preferred not to break down time spent by each attorney in court and out of court. The claim for fees is only for one attorney when in fact five attorneys were engaged in work on the case with three qualified as experts in the field. We realize in some instances the fees would be higher for some counsel, especially for in-court time. We

conclude that $87.20 an hour is reasonable in light of the *Johnson* factors discussed above. Thus, the "lodestar" figure can be determined by multiplying the reasonable hourly rate of $87.20 by the number of hours reasonably spent, 1092.15. The lodestar is $95,235.48. *See Morrow v. Finch*, 642 F.2d 823 (5th Cir. 1981) ($100/hour); *Copper Liquor v. Adolph Coors Co.*, 624 F.2d 575 (5th Cir. 1980) (anti-trust case wherein the prevailing rate was set at $100/hour for lead counsel and $75/hour for assistant counsel); *Neely v. City of Grenada*, 624 F.2d 547 (5th Cir. 1980) (Title VI and VII case wherein appellate court set fees at $100/hour); *Brown v. Culpepper*, 559 F.2d 274 (5th Cir. 1977) (appellate court set fees at requested rates of $65 and $75/hour in jury discrimination suit); *Wolf v. Frank*, 555 F.2d 1213 (5th Cir. 1977) (stockholders' derivative case where court affirmed rates of $150/hour in court and $100/hour out of court plus bonus); *Connor v. Winter*, 519 F.Supp. 1337 (S.D.Miss.1981) (fees of $50/hour for work performed from 1973–1976 and 1976–1977 and $75/hour for work performed in 1977–1979 approved).

6. Although counsel for Loyalists are regular employees of organizations which regularly conduct civil rights litigation, recovery of a fee was wholly contingent on the outcome of the suit. *See Morrow v. Finch*, 642 F.2d 823, 825 (5th Cir. 1981), *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981); *Connor v. Winter*, 519 F.Supp. 1337, 1345 (S.D.Miss.1981).

7. The time impositions in this case are a relevant factor. A month after filing of the complaint in May 1972, a trial was held. Further hearings were held in the district court on July 5, 1972 and in the Fifth Circuit on July 8, 1972. This is only an example of the fast paced proceedings which took place in this court.

8. This case involved significant constitutional principles having a statewide impact. The central result was that a predominantly black political party and its members were free to engage in activity protected by the first amendment without interference from the state. That the relief

sought and obtained by the Loyalists was nonpecuniary in nature is immaterial. *Connor v. Winter*, 519 F.2d at 1345.

9. It is apparent in this case that counsel for the Loyalists have extensive experience in the area of civil rights litigation and enjoy excellent reputations in their field and are exceptionally able attorneys.

10. The undesirability of this case is apparent. Representing clients in civil rights cases does not generate high fee-paying clients. Bar surveys reflect that the lowest paying legal practices are *pro bono*, civil rights litigation and legal reform. However, because counsel for the Loyalists regularly engage in litigation of this sort and are members of organizations directed toward civil rights litigation, the undesirability of this case is not a factor to be considered in setting the appropriate fee in this case. *See Connor v. Winter*, 519 F.Supp. at 1345.

11. The nature and length of the professional relationship is not relevant in this case.

12. Awards made in similar civil rights cases fall within the same range as those cited by counsel for the Loyalists.

Now that the lodestar figure of $95,-235.48 has been determined to be our basic figure, we will next consider the propriety of an adjustment to that figure on the basis of the contingent nature of the suit, the delay in payment and the quality of representation. The Loyalists requested an enhancement factor of 2.842 derived from the case weight for Federal Question, Civil Rights: Voting (Code 3–441) from the Annual Report of the Director, Administrative Office of the United States Courts, 1980, Table X–2, p. A–161. It is our conclusion that the lodestar figure is the appropriate amount of attorneys' fees. First, all but ninety-three hours were considered by this Court in calculating the reasonable number of hours expended. We discounted the number of hours by this amount finding they were expended prior to the filing of the complaint and were not expended in pursuit of resolution of this case. Since all other hours were considered to be expended

in pursuit of their clients' interest, we conclude that no further adjustment is necessary to reflect the particular nature of the work involved. *See National Ass'n of Concerned Veterans*, at 1335. Moreover, the hourly rate underlying the lodestar fee itself comprehends an allowance for the contingent nature of the availability of fees. *Copeland v. Marshall*, 641 F.2d at 893. Thus, no further adjustment duplicating that allowance is necessary. Further, no upward adjustment is warranted due to the delay in payment which has resulted since the hourly rate used in computing the lodestar is based on presently hourly rates. *National Ass'n of Concerned Veterans*, at 1328; *Copeland v. Marshall*, 641 F.2d at 893 and n.23. Thirdly, no up or down adjustment will be made to reflect the quality of representation. As stated in *Copeland*, an adjustment based on this factor is appropriate *only* when the representation is unusually good or bad, *taking into account the level of skill normally expected of an attorney* commanding the hourly rate used to compute the "lodestar". 641 F.2d at 893. Thus, we conclude that the reasonable attorneys' fees to be awarded in this case is $95,235.48.

In addition to attorneys' fees, counsel for the Loyalists are entitled to recover the reasonable and necessary expenses incurred in asserting their rights. *See, e.g., Jones v. Diamond*, 636 F.2d at 1382; *Gates v. Collier*, 636 F.2d 942 (5th Cir. 1981); *Fairley v. Patterson*, 493 F.2d 598, 606–07 (5th Cir. 1974); *Connor v. Winter*, 519 F.Supp. at 1345. After considering the affidavits and documentation presented by counsel in support of claimed litigation expenses, we conclude that counsel should be awarded the following expenses:

| | |
|---|---|
| Expenditures from May 1972 to August 1972 | $14,696.96 |
| Bill of costs—first appeal | $ 5,700.00 |
| Bill of costs—second appeal | 415.35 |
| Subpoena service & daily fees | 107.60 |
| Air travel | 2,617.00 |
| Car rental | 196.60 |
| Courier & delivery service | 310.79 |
| Phone | 506.99 |

| | |
|---|---|
| Copying | 1,096.06 |
| Typing—part-time | 647.00 |
| Meals & lodging | 2,923.11 |
| Ground transportation | 176.46 |
| TOTAL | $14,696.96 |

We conclude that the expenditures incurred following the filing of this complaint, in the amount of $14,696.96, is reasonable in light of the geographical locations of the attorneys and the frequent trips to Mississippi and New Orleans, Louisiana. Counsel requested a total of $17,373.84, which sum included expenditures incurred from December 1971 to April 1972 in the amount of $2,676.88. However, since we precluded counsel from claiming hours spent prior to the filing of this lawsuit, we conclude that recovery of expenses for that time period is also inappropriate. Counsel supplemented their Fee Application to include work done in recovery of their fees. Their hours were, of course, considered in calculating the lodestar figure. They request an additional $809.90 for expenses incurred in recovering attorneys' fees. We conclude this amount is also reasonable. Therefore, the total of costs and expenses recoverable by counsel for the Loyalists is $15,506.86.

Our final task is to devise an equitable plan for allocating payment of this award between the Regular party officers and the state officials. The Fifth Circuit did not offer any guidance on this issue and this Court was unable to locate case authority on the question of the imposition of attorneys' fees against joint defendants. None of the parties requested that a hearing be held or that discovery be taken to assist the Court in allocating payment. Any discovery requests would have had to be promptly advanced prior to the filing of final opposition papers. *See National Ass'n of Concerned Veterans*, at 1329. A hearing on this question may have been appropriate. *Id.* at 1329–1330. But, this Court has attempted to prevent the question of attorneys' fees from evolving into an exhaustive and lengthy trial-type proceeding. Of course, the Regulars and the State of Mississippi continue to staunchly oppose the imposition of any fee award. However, the Fifth Circuit has indicated otherwise. The Fifth Circuit's opinion focused primarily on the unconstitutionality of the state's exclusive registration statute and the wrongful enforcement thereof. *Riddell v. National Democratic Party*, 508 F.2d 770, 776 (5th Cir. 1975). The Court was reluctant to interfere with the "intrinsically political conflict" between the Regulars and the Loyalists, preferring instead to allow these differences to be resolved through the political process. *Id.* Considering the Fifth Circuit's approach to the issues raised herein, we conclude that the only equitable approach is to hold the Regulars and the State jointly and severally liable.

Therefore, it is the opinion of this Court that counsel for the Loyalists recover $95,235.48 in attorneys' fees and $15,506.86 in costs and expenses from the Regulars and the State, jointly and severally.

An order in accordance with this opinion shall be submitted by the parties as provided by the Local Rules.