Tom **RIDDELL**, Jr., et al., Plaintiffs,

v.

The **NATIONAL DEMOCRATIC PARTY**, et al., Defendants-Appellees Cross-Appellants,

v.

William F. **WINTER**, Governor of the State of Mississippi, et al., Defendants-Appellants Cross-Appellees.

No. 82–4372.

United States Court of Appeals, Fifth Circuit.

Aug. 15, 1983.

Rehearing and Rehearing En Banc Denied Oct. 11, 1983.

---

See also, D.C., 344 F.Supp. 908.

Peter M. Stockett, Jr., Asst. Atty. Gen., Jackson, Miss., for defendants-appellants cross-appellees.

Neil Bradley, Atlanta, Ga., for defendants-appellees cross-appellants.

Before INGRAHAM, WILLIAMS and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

The merits of this case were resolved over 200 reporter volumes ago, *see Riddell v. National Democratic Party,* 508 F.2d 770 (5th Cir.1975) (*Riddell I*), and we are left today with the matter of attorneys' fees. Following our remand in *Riddell v. National Democratic Party,* 624 F.2d 539 (5th Cir. 1980) (*Riddell II*), the district court awarded fees and costs pursuant to 42 U.S.C. § 1988 to the prevailing Loyalists and made the losing parties, the Regulars and the state officials, jointly and severally liable for this amount. 545 F.Supp. 252 (S.D.Miss. 1982). The state officials have appealed the imposition of joint and several liability; the Loyalists challenge the amount of the attorneys' fees award in several respects. Concluding that the district court for the most part neither exceeded the scope of the remand nor abused its discretion, we affirm in all but two minor respects.

*Facts and Procedural History*

We will try to restate as briefly as possible the facts of this long-winded dispute between two factions of the Mississippi Democratic Party, their names seemingly drawn from some obscure moment in European history. Some discussion of the merits is relevant to answering the questions raised by this appeal.

The so-called "Regulars" had long been registered under Mississippi law as "The Democratic Party of the State of Mississippi" when the "Loyalist" faction formed and began to use the name "Freedom Democratic Party." At the 1968 presidential nominating convention, the National Democratic Party refused to seat the Regulars and seated a Loyalist delegation instead. The Regulars then brought this suit against the Loyalists and the National Democratic

Party to enjoin the Loyalists from using the Democratic Party name and from participating in the 1972 Democratic National Convention at Miami Beach. The Loyalists counterclaimed that the Mississippi statute which established the Regulars' right to exclusive use of the name "Democratic Party" was unconstitutional and successfully moved to add as parties the Governor, Attorney General, and Secretary of State of Mississippi.

The district court declared that the Regulars were the "legal, official Democratic Party of the State of Mississippi, and that the Loyalist faction is not." 344 F.Supp. 908, 922 (S.D.Miss.1972). It found that the Regulars were entitled a hearing before the Credentials Committee of the Democratic National Convention, but declined to grant injunctive or supplemental injunctive relief. *Id.* at 922–923. The Loyalists appealed, and we held unconstitutional the Mississippi statute that had been employed to deny them the use of the "Democratic" name. *Riddell I,* 508 F.2d 770 (5th Cir.1975).

After remand, negotiations proceeded between the Regulars and the Loyalists. In May 1977 the two factions agreed to merge into a single unified party. Thereafter the district court denied the Loyalists' and the national party's motions for an award of fees and costs. On appeal we reversed and remanded, finding no special circumstances to justify denying an award of attorneys' fees and costs under 42 U.S.C. § 1988. *Riddell II,* 624 F.2d 539. Specifically, we directed the district court to calculate an award of attorneys' fees under the guidelines announced in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), and to "devise an equitable plan for allocating payment of the award between the Regular party officers and the state officials." 624 F.2d at 547.

On the Loyalists' motion for attorneys' fees, the district court found that 1092.15 of the 1185.15 hours claimed by them were reasonably expended on the case. 545 F.Supp. at 260. It found that $87.20 was a reasonable, inflation-adjusted lodestar. *Id.* at 261. Multiplying these two numbers, it

arrived at a figure of $95,235.48, which it declined to adjust further. *Id.* at 262. The court also awarded $15,506.86 in costs and expenses. *Id.* at 263. Finally, it concluded that "the only equitable approach" was to hold the Regulars and the State of Mississippi jointly and severally liable for these amounts. *Id.*

The state officials [1] and the Loyalists appeal from this judgment. The officials maintain that the district court's imposition of joint and several liability was contrary to the mandate of *Riddell II*—to "devise an equitable plan for allocating payment of the award between the Regular party officers and the state officials." The Loyalists contend that the district court erred in denying an enhancement of the lodestar, in disallowing certain hours expended before the Regulars filed suit, and in disallowing without explanation travel time and time spent on preparing the attorneys' fee application. We turn to these arguments,[2] recognizing that our standard of review for an award of attorneys' fees is "abuse of discretion," *Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1094 (5th Cir.1982), although a trial judge is required to explain the basis for the award, including an indication of how the twelve *Johnson* factors affected his decision. *Id.* at 1092.

### Allocation of the Award

According to the State of Mississippi, our mandate in *Riddell II* directed the district court to divide liability between the Regulars and the state. Therefore, Mississippi argues, the court violated the terms of the mandate when it imposed joint and several liability. The practical concern driving this legalistic argument is obvious: now that the two factions of the Mississippi Democratic Party are unified, it is entirely likely that the Loyalists will try to collect all of the judgment from the state.

It barely needs repeating that

a decision of a legal issue by an appellate court establishes 'the law of the case' which must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal in the appellate court unless: (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to such issue, or (3) the prior decision was clearly erroneous and would work manifest injustice.

*EEOC v. International Longshoremen's Assn.*, 623 F.2d 1054, 1058 (5th Cir.1980), *cert. denied*, 451 U.S. 917, 101 S.Ct. 1997, 68 L.Ed.2d 310 (1981). We do not believe, however, that the issue of separate, as opposed to joint and several, liability was resolved in the prior appeal. *See Doran v. Petroleum Management Corp.*, 576 F.2d 91, 93 (5th Cir.1978) ("[o]ur remand permitted any resolution not inconsistent with our opinion"). Although we acknowledge that the legal meaning of a word is sometimes galaxies away from its earthly meaning, neither meaning of "allocate," in our view, prevents the same debt from being charged twice to different parties. The Mississippi officials rely on an interpretation of "allocate" borrowed from the Internal Revenue Code, but "the modern lexicon of the tax law," *see Metzger Trust v. Commissioner*, 693 F.2d 459, 460 (5th Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 3537, 77 L.Ed.2d 1388 (1983) is a dictionary from another universe, and we decline to import it here. In short, our mandate in *Riddell II* left it open to the district court to "allocate" the entire liability to the Regulars

---

1. As we noted in *Riddell II*, these state officials are liable only in their official capacity. 624 F.2d at 545–56. Hence, the judgment against them is effectively against the taxpayers of Mississippi.

2. In a recent decision, the Supreme Court confronted the question of what attorneys' fees a partially prevailing party is entitled to under 42 U.S.C. § 1988, and held that (1) hours spent on unsuccessful unrelated claims should be excluded and (2) where the success achieved is only limited, the district court should award only that amount of fees reasonable in light of the results obtained. *Hensley v. Eckerhart*, —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Neither party argues that *Hensley* requires a redetermination of the fee award in this case, and, accordingly, we do not reach the issue.

and the state officials, jointly and severally. That is what it did.

Two other points sustain the district court's reading of our earlier instructions. First, in *Riddell II* we also stated, "In the absence of more specific findings of special circumstances, we must remand the case back to the district court for *at least a partial allocation* of costs and attorneys' fees against the state officials." 624 F.2d at 545 (emphasis added). In other words, a partial allocation was expressly made a minimum, not the maximum, that could be ordered against the state. Furthermore, we are not in the habit of deciding issues not before us on appeal, and the only issues before us in *Riddell II* were the propriety of assessing *any* liability for attorneys' fees on the Regulars and the state officials.

The district court's imposition of joint and several liability was not an abuse of discretion. Our original opinion makes it clear that Mississippi had a substantial role in the constitutional violation that was purged by the lawsuit. As we said in conclusion:

> To the extent then that there is meaning to the term "Democratic Party," and to the extent that the ability to use the term affects party organization, party contributions, and party loyalty, we believe that the state's attempt to deprive the Loyalists of the opportunity to describe themselves on the ballot as part of the Democratic Party is an unconstitutional and impermissible restraint on the Loyalists' constitutional guarantees of free association.

508 F.2d at 779. In addition, the record shows that the state officials and the Regulars piggybacked onto each other's legal work. Indeed, both filed the same perfunctory three-page response to the Loyalists' application for fees.[3]

Finally, we note here, as we shall note again, that the total award is a modest one. The district court did not abuse its discretion in making it a collectible one.

*No Lodestar Adjustment*

█ The Loyalists argue that the district court erred in not adjusting the lodestar figure of $95,235.48 upward. Specifically, they contend that some of the *Johnson* factors were ignored; that others were improperly taken into account in determination of the *lodestar;* and that the final attorneys' fee award, given the subsidiary findings on preclusion of other work, the experience of the attorneys, the time limitations they operated under, and the contingent nature of the case, was so low as to constitute an abuse of discretion.

In *Copper Liquor, Inc. v. Adolph Coors Co.,* 684 F.2d 1087, we outlined the methodology to be applied in making attorneys' fee awards:

> [The *Johnson*] factors should be considered in the following framework:
>
> (1) Ascertain the nature and extent of the services supplied by the attorney;
>
> (2) Value the services according to the customary fee and quality of the legal work; and
>
> (3) Adjust the compensation on the basis of the other *Johnson* factors that may be of significance in the particular case.

*Id.* at 1092. Here the district court found that "counsel for the Loyalists were precluded from accepting other employment" by their involvement in the litigation (*Johnson* 4). 545 F.Supp. at 261. It also found that "recovery of a fee was wholly contingent on the outcome of the suit" (*Johnson* 6), and that "time impositions in this case" were a relevant factor (*Johnson* 7). *Id.* This lawsuit, the trial judge found, "involved significant constitutional principles having a statewide impact" (*Johnson* 8). *Id.* And the trial judge acknowledged that "counsel for the Loyalists have extensive experience in the area of civil rights litigation and enjoy excellent reputations in their field and are exceptional able attorneys" (*Johnson* 9). *Id.* at 262. Nonetheless, he

---

**3.** The district court at one point commented that "counsel opposite [had] failed to assist the Court" and that their objection to the Loyalists'

fee application was "wholly insufficient." 545 F.Supp. at 260.

declined to adjust the lodestar upward. The Loyalists argue that this misapplication of the *Johnson* factors was an abuse of discretion and necessitates recomputation of the attorneys' fee award.

We disagree. Unlike the Loyalists, we read the district court's opinion as taking those *Johnson* factors into account. While it appears that they were considered in the initial computation of the lodestar rather than as potential adjustments to this figure, they were not overlooked. Rather, the district court's exhaustive treatment of those factors followed by its explanation that "the lodestar figure is the appropriate amount of attorneys' fees" indicates that the contingent nature of the case, its importance, the time demands that it made, and the skill of the Loyalists' attorneys were incorporated into the $95,235.48 award. We see no abuse of discretion. As we have said, "[A] court need not in determining the multiplier consider some factor already included in the calculation of the lodestar." *Graves v. Barnes*, 700 F.2d 220, 224 (5th Cir.1983).

We note that our circuit's method, which we have summarized above, is generally to apply those *Johnson* factors *after* the lodestar has been calculated. We have also stated that trial judges should articulate fully the reasons for their awards, including an indication of how the twelve *Johnson* factors affected the decision. *See Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d at 1092; *Copper Liquor, Inc. v. Adolph Coors Co.*, 624 F.2d 575, 581, 584 (5th Cir.1980). As we have said, "What we require is not a meaningless exercise in parroting and answering of *Johnson*'s twelve criteria, but

some assurance that the court has arrived at a just compensation based on appropriate standards." *Id.* at 581 (quoting *Davis v. Fletcher*, 598 F.2d 469, 470–71 (5th Cir. 1979)). The district court's analysis did deviate slightly from these guidelines. While emphasizing that the *Copper Liquor* approach is preferred, we simply point out that we find no abuse of discretion here.[4]

Turning to the substance of the award, we agree with the Loyalists that it appears to be on the low side. The Loyalists' attorneys have outstanding credentials; this was a novel and significant case. Nevertheless, in our book this $95,235.48 award, based on a $87.20 hourly rate and an allowance of all but ninety-three of the claimed hours, was not so low as to constitute an abuse of discretion.

### Pre-Litigation Expenses

The Loyalists also contend that the district court abused its discretion in denying compensation for ninety-three of the 107 attorney hours claimed for the period before the Regulars filed suit and for the corresponding travel time. The district court found, "[T]here has been no showing that this time was expended in pursuit of a successful resolution of the case." 545 F.Supp. at 260. We agree, and therefore cannot conclude that there was an abuse of discretion.

As the Loyalists explain, the 107 hours were spent on activities that helped them respond to the call of the 1972 Democratic National Convention and, simultaneously, develop a record that they were a viable

---

4. Some confusion may have resulted from our reliance on *Copeland v. Marshall*, 641 F.2d 880 (D.C.Cir.1980) (en banc), a precedent that we indicated we were following in *Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d at 1092–93. In fact, while the District of Columbia Circuit apparently recognizes only two potential adjustments to the lodestar, the contingent nature of success and the quality of representation, *see* 641 F.2d at 892–94, we have instructed trial judges to consider *all* of the *Johnson* factors other than time and labor and the customary fee *after* the lodestar has been computed. *See* 684 F.2d at 1092.

Recently, we entered another opinion on attorneys' fees that discussed *Copeland* extensively and purported to follow it. *Graves v. Barnes*, 700 F.2d at 223–24. Further, the Supreme Court, citing *Copeland*, has recently stated that "many of [the *Johnson*] factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley v. Eckerhart*, —— U.S. at —— n. 9, 103 S.Ct. at 1940 n. 9. Thus, the present rule on methods for computing attorneys' fees is not entirely clear.

political party within Mississippi.[5] While these activities probably enhanced the Loyalists' legal position, that does not mean they were necessarily compensable under 42 U.S.C. § 1988. A distinction must be drawn between those acts—whether undertaken by attorneys or lay persons—that create a legal entitlement, and acts to defend the entitlement. The Civil Rights Attorney's Fee Awards Act is designed to compensate lawyers for vindicating constitutional claims; it does not require one party to subsidize another's exercise of constitutional rights. We do not mean to denigrate the important First Amendment activities carried on by the Loyalists with the aid of their counsel. We hold only that 42 U.S.C. § 1988 does not authorize a monetary recovery for them. The district court did award $1220.80 for fourteen hours spent before the filing of the suit on legal research. Its failure to make additional compensation was not an abuse of discretion.

### Travel Time and Time Spent Preparing Attorney's Fee Application

 The Loyalists claimed a total of eighty-nine hours travel time relating to the period after the Regulars filed suit. They also claimed 26.2 hours for compiling the time and financial records. The district court's opinion did not mention either of these categories and no compensation for them was included in its award.[6] This omission of any reference appears to have been an oversight.

Reluctantly, we must reverse and remand on these minor issues. The record does not establish as a matter of law what a reasonable recovery for these claims would be. Accordingly, we affirm the district court's judgment on all other points but reverse and remand for consideration of the Loyalists' requests for compensation for travel and recordkeeping time.

---

**5.** For example, eighteen hours were claimed for twelve precinct election workshops conducted at various sites throughout the state; twenty-eight hours were claimed for preparation of delegate selection forms and compiling of delegate selection results; twenty hours were

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

claimed for gathering information and the preparation of public notices. 545 F.Supp. at 260.

**6.** The judgment did contain compensation for travel *expenses.* 545 F.Supp. at 262.