**TODD SHIPYARDS CORPORATION,**
Plaintiff,

v.

**TURBINE SERVICE, INC.,** Gonzales **Manufacturing and Industrial Machine Works, Inc., and a Certain Turbine Rotor, Casing, Blades, Rings, Housing, and All Assorted Parts Thereto, all of which being from the SS KATRIN,** Defendants.

Civ. A. Nos. 75–1825, 75–2719.

United States District Court,
E.D. Louisiana.

July 27, 1984.

Donald F. Mooney, New York City, J. Francois Allain, New Orleans, La., for Auto Transp., S.A.

James B. Kemp, Jr., New Orleans, La., Richard A. Hagen, New York City, for Todd Shipyards Corp.

Michael G. Crow, New Orleans, La., for Turbine Service, Inc.

Fred E. Salley, New Orleans, La., for The Travelers Ins. Co.

Allen F. Campbell, New Orleans, La., for Gonzales Mfg. and Indus. Machine Works, Inc.

John I. Hulse, IV, New Orleans, La., for Sentry Ins. Co.

## OPINION ON REMAND

CASSIBRY, Senior District Judge:

The holding of this court was affirmed in part, modified in part, reversed in part, and remanded for further proceedings not inconsistent with the opinion in *Todd Shipyards Corporation v. Turbine Service, Inc.*, 674 F.2d 401 (5th Cir.1982). On September 22, 1983, this court rendered its opinion on remand and ordered counsel for Auto to prepare a judgment consistent with

the court's opinion.[1] The decision of the court and the proposed judgment subsequently presented to the court by Auto precipitated a rush of correspondence from the parties to the court. These communications from the parties called the court's attention to certain oversights or omissions in its opinion on remand, for which the court is grateful. In addition to performing this service, the parties chose to devote the greater part of their correspondence to a belated effort to press their positions upon the court again, an attempt singularly inappropriate at this stage of this protracted litigation. Nevertheless, in an effort to send this matter to its deserved, and long-overdue, rest, the court sifted through all of these contentions with renewed care. This review now having been completed, the court has determined to modify, in the interest of clarity and finality, the opinion on remand it rendered on September 22, 1983. Accordingly, the court hereby orders its opinion on remand of September 22, 1983 WITHDRAWN and REPLACED by this opinion on remand, as rendered this date.

## I. THE ISSUES ON REMAND

This court is instructed to resolve, upon remand, the following issues:

(1) The effect of the holding by the Court of Appeals that the red-letter clause in the Todd Shipyards Corporation ("Todd") contract limited Todd's liability for negligence or breach of contract to $300,000;

(2) the effect of the reduction of loss of use damage by the Court of Appeals to the amount of $498,000;

(3) the amount of pre-judgment interest that this court must award;

(4) the amount the damage awards against Travelers Insurance Company ("Travelers") and Sentry Insurance Company ("Sentry") must be reduced due to the holding by the Court of Appeals that Travelers and Sentry

are not liable for any costs incurred in repairing and replacing the work product of their insureds, including the cost of inspecting, crating, shipping, and reinstalling the LP turbine, 674 F.2d at 423; and

(5) the final determination of damages with respect to all parties considering all of the above adjustments to the original opinion and award.

Items 1, 2, and 5 concern adjustments and recalculations to be made in the damage awards in accordance with the opinion of the Court of Appeals, but require no new findings of fact or conclusions of law. The recalculated awards are set forth in the Allocation of Damage Awards table which appears at the conclusion of this section.

## A. PRE–JUDGMENT INTEREST

Stating that the award of pre-judgment interest is the rule rather than the exception, the Court of Appeals directed this court to calculate and award pre-judgment interest. 674 F.2d at 415–16. The purpose behind an award of pre-judgment interest, in admiralty cases as elsewhere, is to compensate a claimant for the loss of use of funds to which he is rightfully entitled. 674 F.2d at 415, *quoting Noritake Co. v. M/V Hellenic Champion*, 627 F.2d 724, 728 (5th Cir.1980). Before it can calculate the award of pre-judgment interest, however, this court must first answer three questions. These are: (1) what rate of interest to use; (2) whether to calculate interest on a simple or a compound basis; and (3) the date from which pre-judgment interest should run.

### 1. *The Rate of Interest*

Since pre-judgment interest is awarded as compensation for the use of funds wrongfully withheld, admiralty courts have discretion in setting the rate of pre-judgment interest. *Platoro Ltd., Inc. v. Unidentified Remains, etc.*, 695 F.2d

---

**1.** In this opinion on remand, the court has used the term "Auto" to refer to Auto Transportation, S.A. The same party was known as "Owners" or "Shipowners" in the court's original opinion. *See Todd Shipyards Corp. v. Turbine Serv., Inc.,* 467 F.Supp. 1257, 1267 (E.D.La.1978).

893, 906–07 (5th Cir.1983); *In re M/V Vulcan*, 553 F.2d 489, 491 (5th Cir.1977). Admiralty courts may be guided by state law in setting the rate of pre-judgment interest, but they are not bound by it. *Platoro*, 695 F.2d at 907; *Signal Oil & Gas Co. v. Barge W–701*, 654 F.2d 1164, 1177 (5th Cir. Unit A, 1981). In calculating the awards of pre-judgment interest, I have made use of the current state statutory rates, as set forth in Article 2924 of the Louisiana Civil Code.[2] *Todd* has been pending during each of the three periods delineated by the legislature, and I find the most reasonable construction and application of Article 2924 to be the following: the rate of interest shall be seven percent from the date the loss was sustained through September 11, 1980; ten percent from September 12, 1980 through September 11, 1981; and twelve percent from September 12, 1981.

■ Auto has urged the court to use the prime rate, as evinced by certain commonly accepted interest rate schedules, as the appropriate touchstone in its calculations. The problem with Auto's position is quite simple: it has introduced no proof that it borrowed any money and incurred higher costs. *See Signal Oil*, 654 F.2d at 1177. In the absence of such proof, I am unpersuaded that nothing short of the prime rate will grant Auto (and other parties) "full and fair" compensation and have determined to employ the rates of interest fixed by Article 2924.

### 2. *The Method of Calculation of Pre-Judgment Interest*

■ The rates of interest having been selected, the next question is whether interest should be calculated on a simple or compound basis. In view of the inordinate duration of this litigation and the uncommonly high rates of return available to investors over the principal part of this same time period, I have determined that full and fair compensation is more nearly achieved by a calculation of interest on a compound basis. *See King Fisher Marine Service, Inc. v. NP Sunbonnet*, 724 F.2d 1181, 1187 (5th Cir.1984). Accordingly, interest on the principal sums due and owing has been compounded daily, at the statutory rate then in effect, up to the date of September 1, 1983. I deem simple interest at the statutory rate of 12% sufficiently compensatory to be employed thereafter. The Allocation of Damage Awards table sets forth the amount of interest to be added to each figure of recovery for each day after September 1, 1983 until the date of entry of judgment.

### 3. *The Dates from which Pre-Judgment Interest Runs*

■ In general, an award of pre-judgment interest is calculated from the date the loss was sustained. *In re M/V Vulcan*, 553 F.2d at 490; *Managua Navigation Co. v. Aktieselskabet Borgestad*, 7 F.2d 990, 993 (5th Cir.1925). To the extent possible, I have followed this general rule with the exceptions given below.

The Court of Appeals upheld this court's finding regarding the total amount of time it would have taken to conduct repairs on the LP turbine to return the turbine to the condition it should have been in on May 25, 1975. The Court of Appeals, however, also found that the vessel was operational only 77.2% of the time, resulting in a loss of use time of 166 days, at the rate of $3,000 per day. 674 F.2d at 414.

■ Auto, therefore, is to be awarded loss-of-use damages for 77.2% of the 215 days after May 25, 1975. Of course, it is not possible to determine the precise dates

---

**2.** Article 2924 provides, in pertinent part, as follows:

"The rate of judicial interest resulting from a lawsuit pending or filed during the indicated periods shall be as follows. Prior to September 12, 1980, the rate shall be seven percent per annum. On or after September 12, 1980, until September 11, 1981, the rate shall be ten percent per annum. On or after September 11, 1981, the rate shall be twelve percent per annum."

Though perhaps not pellucidly clear, the statute does not apparently intend that the date on which a suit is filed should freeze the rate of interest, or else the "pending" language would be surplusage.

upon which the ship in question would have been operable. In the judgment of the court, calculation of pre-judgment interest from a date mid-way through the 215-day period represents a fair compromise. September 10, 1975 is 108 days after May 25, 1975. Thus, pre-judgment interest shall begin to run on September 10, 1975 for the entire amount of loss of use damages of $498,000. The total in this category is $124,184.00 up to November 14, 1978.

Payment of the Siemens bill for the cost of replacement blades and repair expenses occurred on three different dates. Total recovery for that category of damages was set at $221,393.76. Pre-judgment interest is awarded for one-third of that amount ($73,797.92) from September 9, 1975; for another third from September 22, 1975; and for the last third from November 14, 1975. Thus, total pre-judgment interest in this category amounts to $53,872 up to November 14, 1978.

Pre-judgment interest for the agents' accounts from Hansen & Tidemann, detailed at 467 F.Supp. at 1310, runs from the following dates on the following amounts:

| Date | Amount |
|------|--------|
| August 13, 1975 | $ 7,277.28 |
| September 22, 1975 | 9,270.51 |
| November 18, 1975 | 2,232.44 |
| April 26, 1976 | 102,142.88 |

The total in this category is $24,657 up to November 14, 1978.

Expenses for the expert surveyor Higgins amounted to $11,292.07. Higgins billed Auto for work on the vessel between June 1975 and February 1976. Pre-judgment interest on that amount begins to run on June 21, 1976. The total in this category is $2,066 up to November 14, 1978.

Interest on the master's account awards is calculated on the following amounts from the following dates:

| Date | Amount |
|------|--------|
| June 5, 1975 | $18,500.00 |
| July 9, 1975 | 5,000.00 |
| October 10, 1975 | 5,000.00 |
| February 4, 1976 | 10,500.00 |
| February 26, 1976 | 37,526.72 |

The total in this category is $17,698 up to November 14, 1978.

Interest on the repatriation and recrewing expenses runs as follows:

| Date | Amount |
|------|--------|
| August 7, 1975 | $ 8,403.66 |
| August 13, 1975 | 1,977.33 |
| February 26, 1976 | 12,014.03 |

The total in this category is $5,186 up to November 14, 1978.

Pre-judgment interest on the award for Bunkers and Lube Oil of $43,977.61 begins to run on February 26, 1976. Interest on the bond premium of $938.00 is awarded from November 14, 1978. The total is $9,214 up to November 14, 1978.

Of course, Todd deserves to be paid pre-judgment interest from the date the contract should have been completed upon the amount it would have been paid by Auto on the contract. I have calculated that interest from May 24, 1975, the date of the ill-fated river trial, and the total is $48,206 up to November 14, 1978. Likewise, Todd owes Turbine Service pre-judgment interest on the amount Todd owes for the work contracted to Turbine Service and I have calculated that sum from the same date forward.

All such sums have been calculated up to the date of the original judgment, November 14, 1978. However, pre-judgment interest should run to the date of the judgment upon remand. *Ashland Oil Co. v. Phillips Petroleum Co.*, 607 F.2d 335, 336 (10th Cir.1979), *cert. denied*, 446 U.S. 936, 100 S.Ct. 2153, 64 L.Ed.2d 788 (1980); *Hysell v. Iowa Public Serv. Co.*, 559 F.2d 468, 476 (8th Cir.1967); *Riha v. International Tel. & Tel. Corp.*, 533 F.2d 1053, 1054–55 (8th Cir.1976). Pre-judgment interest on this award and on the other damage awards is set forth in the Allocation of Damage Awards table at the conclusion of this section.

Using the interest rates discussed above for the appropriate periods, the total pre-judgment interest due Auto up to November 14, 1978 is $236,877, minus $48,206 interest due on Auto's obligation to Todd, for a total of $188,671. Added to this is $137,715 interest to September 11, 1980; $120,268 to September 11, 1981; $337,873

to September 1, 1983; and $528 per day for each day after September 1, 1983 until entry of judgment.

## B. DETERMINATION OF LIABILITY OF TRAVELERS AND SENTRY

The Court of Appeals concluded that Travelers and Sentry were liable for those damages attributable to the "down time" of the ship such as damages for loss of use of the vessel, general expenses from the master's accounts, and pilotage, wharfage, tug, repatriation and recrewing expenses. In addition, the Court found that the "injury to work" exclusion in the comprehensive general liability insurance policies of Travelers and Sentry [3] excluded the cost of repairing or replacing the work product of the insureds. The Court also found that the exclusion does not exclude damages to property other than the insureds' work product. Because the Court found that this court did not exclude the coverage for all costs incurred in repairing and replacing the insureds' work product, the Court remanded the case for redetermination of the exact amount of Travelers' and Sentry's liability.

██ Travelers and Sentry contend that the Court of Appeals directed this court to exclude *all* costs of inspecting, crating, shipping and reinstalling the LP turbine. I disagree with the insurers' contention. The Court of Appeals stated that "Travelers and Sentry are not liable for any costs incurred in repairing and replacing the work product of their insureds, including the cost of inspecting, crating, shipping and reinstalling the LP turbine." 674 F.2d at 423. This statement appears at the end of three full pages of discussion in the opinion providing guidance on how to determine what precisely the insureds' work product is and whether the exclusion excludes coverage for damage to the insureds' entire work product or merely to the defective components of that work product. It clearly was not necessary for the Court of Appeals to elucidate the subtleties inherent in the two determinations described above if the remand were a direction to exclude the *entire cost* of inspecting, crating, shipping and reinstalling the LP turbine. The Court's analysis has significance only if the remand is taken to mean that this court must segregate costs and dissect invoices in order to exclude only those costs of inspecting, crating, shipping and reinstalling the LP turbine that were attributable to the faulty workmanship of the insureds. This view is bolstered by the statement by the Court of Appeals, 674 F.2d at 423, that:

> "[O]n the other hand, *some of the 'out-of-pocket' expenses* awarded to the KATRIN's Owners are clearly part of the costs of repairing the faulty workmanship of Turbine Service and Gonzales, and consequently are excluded from coverage by exclusion (o)." (emphasis added).

Travelers and Sentry have submitted long lists of expenses that they contend should be excluded from coverage as costs of inspection, crating, shipping or reinstalation. The contentions are, in the main, ill-founded.

The remand by the Court of Appeals has required this court to make a detailed review of the individual items of damage in order to determine whether any given item is excludable on the whole, not excludable, or excludable in part. The latter category of damages includes a large number of invoices where it is simply impossible to say that the expense was made entirely to repair faulty workmanship (thus making the expense excludable) or was suffered in part to repair faulty workmanship and in part to repair damages to property other than the insureds' work product. There is even an argument to be made that all of the expenses of inspecting, crating, shipping and reinstalling the LP turbine would have been incurred in the same amounts even if no damage had been done to the insureds' work product. For example, the cost of shipping the LP turbine to Germany for repair and rebuilding would have been the same whether or not any damages had occurred that required repair or replace-

---

**3.** Travelers' exclusion (m) and Sentry's exclusion (o).

ment of the insureds' work product. Consequently, under that theory, none of the costs of shipping to Germany should be excluded.

All of these considerations lead to the conclusion that only a percentage of the costs of inspecting, crating, shipping and reinstalling the LP turbine may be excluded. The next question is how to determine that percentage.

I have already determined that the policies excluded the $51,323.00 cost of replacing blades in rows 11–14 and 63 other blades in miscellaneous rows of the turbine. Total cost of repairing the LP turbine was found to be $221,393.76. Thus, the excludable costs of repair and replacement comprised 23% of the total repair

costs. Therefore, I have reviewed each invoice to the extent possible given the state of the record and, whenever a cost of inspection, crating, shipping or reinstalling the LP turbine appears to be included in an item of damage, I have excluded 23%. No item appears to be excludable as a whole.

In sum, I have followed the directions of the Court of Appeals by reviewing, in minute detail, each and every item of expense according to the principles and discussion above. Following a close examination of the exhibits and submissions of the parties, I have determined that some items of expense do not merit exclusion at all. I have further determined that a rated portion of the remaining items are excluded from coverage, as set forth in the table below.

| Category | Amount Excluded | Invoiced Items Reviewed |
|---|---|---|
| Repair and replacement of blades | $51,323.00 [a] | Not applicable |
| Account Dated August 13, 1975 | 110.00 [b] | 16 |
| Account Dated September 22, 1975 | 1,890.00 [c] | 9 |
| Account Dated November 18, 1975 | 283.00 [d] | 2 |
| Account Dated April 26, 1976 | 14,495.00 [e] | 84 |
| Higgins Expenditures | 2,597.00 [f] | Not applicable |
| TOTAL: | $70,698.00 | |

[a] Per original opinion, 467 F.Supp. at 1312.

[b] Amount excluded is 23% of the amounts shown on Exhibits 22P and 22Q.

[c] Amount excluded is 23% of the amounts shown on Exhibits 23E, 23G, 23H and 23I.

[d] Amount excluded is 23% of the amounts shown on Exhibit 24B.

[e] Amount excluded is 23% of the amounts shown on Exhibits 25PP1, 25PP2, 25QQ, 25SS, 25TT, 25UU, 25VV, 25WW, 25XX, 25BBB, 25BBB2, 25DDD, 25DDD1, 25DDD3, 25DDD4, 25EEE, 25III, 25JJJ, 25KKK, 25LLL, 25MMM, 25NNN, 25OOO, 25PPP, 25TTT, 25UUU, 25VVV, 25XXX, 25YYY, 25ZZZ, 25AA, 25U, 25V, 25W, 25X, 25Y, 25Z, 25BB, 25CC and 25DD.

[f] Amount excluded is 23% of recoverable charges per original opinion 467 F.Supp. at 1311.

As the Court of Appeals directed, Travelers and Sentry continue to be liable for damages for loss of use of the vessel, general expense from the master's account and pilotage, wharfage, tug repatriation and recrewing expenses.

## C. ALLOCATION OF DAMAGE AWARDS

The following summaries describe the allocation of damage awards for each party and the corresponding calculations of prejudgment interest due on each award.

(A) Auto recovers the sum of $820,633.29 together with pre-judgment interest of $784,527.00 to September 1, 1983, plus daily interest of $528 per day for each day after September 1, 1983 until the date of entry of judgment, from Todd, Turbine Service, Travelers, Gonzales, and Sentry, *in solido,* subject to the limitations and exclusions as set forth below in (B), (C), and (D).

Auto's damages

| | |
|---|---|
| Repair of LP Turbine | $221,393.76 |
| Loss of Use | 498,000.00 |
| Expenses | 276,052.53 |
| Total | $995,446.29 |
| Less the amount owed by Auto on its contract with Todd | −174,813.00 |
| Principal | $820,633.29 |
| Interest to November 14, 1978 | 236,877.00 |
| Less interest to November 14, 1978 on the amount owed by Auto on its contract with Todd | −48,206.00 |
| | $188,671.00 |
| Interest from November 14, 1978 to September 11, 1980 | 137,715.00 |
| Interest from September 12, 1980 to September 11, 1981 | 120,268.00 |
| Interest from September 12, 1981 to September 1, 1983 | 337,873.00 |
| Total pre-judgment interest due Auto to September 1, 1983 | $784,527.00 |
| Principal | 820,633.29 |
| Total principal plus pre-judgment interest to September 1, 1983 | $1,605,160.29 |
| Daily interest after September 1, 1983 until date of entry of judgment | $528 per day |

(B) Auto recovers from Todd the sum of $300,000.00 together with pre-judgment interest of $287,137.00 to September 1, 1983, plus daily interest of $193 per day for each day after September 1, 1983 until the date of entry of judgment. Due to the *in solido* liability of all defendants, Travelers and Sentry are liable, *in solido,* to Auto for any part of this award which Todd fails to pay to Auto.

| | |
|---|---|
| Principal (red-letter clause limit) | $300,000.00 |
| Principal expressed as a percentage of the amount due Auto ($820,633.29) | (36.6%) |
| Todd's share of the total interest award (36.6% of $784,527.00) | 287,137.00 |
| Total principal plus pre-judgment interest to September 1, 1983 | $587,137.00 |
| Daily interest after September 1, 1983 until date of entry of judgment (36.6% of $528 per day) | $193 per day |

(C) Auto recovers from Turbine Service and Gonzales, *in solido,* the sum of $70,-698.00 together with pre-judgment interest of $67,757.00 to September 1, 1983, plus daily interest of $46 per day for each day after September 1, 1983 until the date of entry of judgment.

| | |
|---|---|
| Principal (amount excluded from coverage under the insurance policies of Travelers and Sentry) | $70,698.00 |
| Interest to November 14, 1978 | 16,360.00 |
| Interest from November 14, 1978 to September 11, 1980 | 11,879.00 |
| Interest from September 12, 1980 to September 11, 1981 | 10,374.00 |
| Interest from September 12, 1981 to September 1, 1983 | 29,144.00 |
| Total principal plus pre-judgment interest to September 1, 1983 | $138,455.00 |
| Daily interest after September 1, 1983 until date of entry of judgment | $46 per day |

(D) Auto recovers from Travelers and Sentry, *in solido,* the sum of $449,935.29 together with pre-judgment interest of $429,633.00 to September 1, 1983, plus daily interest of $289 per day for each day after September 1, 1983 until the date of entry of judgment.

| | |
|---|---|
| Auto's Total Damages | $995,446.29 |
| Less the amount owed by Auto on its contract with Todd | −174,813.00 |
| | 820,633.29 |
| Less Auto's recovery from Todd | −300,000.00 |
| | 520,633.29 |
| Less Auto's recovery from Turbine Service and Gonzales | −70,698.00 |
| Principal amount of recovery by Auto from Travelers and Sentry | $449,935.29 |
| Total Pre-Judgment Interest due Auto to September 1, 1983 | $784,527.00 |
| Less pre-judgment interest to September 1, 1983 on amount owed by Todd ($300,000) | −287,137.00 |
| | 497,390.00 |
| Less pre-judgment interest to September 1, 1983 on amount owed by Turbine Service and Gonzales ($70,698) | −67,757.00 |
| | $429,633.00 |
| Total principal plus pre-judgment interest to September 1, 1983 | $879,568.29 |
| Daily interest after September 1, 1983 until date of entry of judgment | $289 per day |

(E) Todd recovers from Auto the sum of $4,110.00, as stipulated, together with pre-judgment interest of $2,854.00 to September 1, 1983, plus daily interest of $1.80 per day for each day after September 1, 1983 until the date of entry of judgment.

| Principal | $4,110.00 |
|---|---|
| Interest from January 28, 1976 to September 11, 1980 | 866.00 |
| Interest from September 12, 1980 to September 11, 1981 | 522.00 |
| Interest from September 12, 1981 to September 1, 1983 | 1,466.00 |
| Total principal plus pre-judgment interest to September 1, 1983 | $6,964.00 |
| Daily interest after September 1, 1983 until date of entry of judgment | $1.80 per day |

(F) Todd recovers from Turbine Service, Gonzales, Travelers and Sentry, *in solido,*

(a) any amounts it has paid to Auto, as set out in (B) above.

(b) reimbursement of vessel maintenance charges in the sum of $95,537.00 together with pre-judgment interest of $66,482.00 to September 1, 1983, plus daily interest of $53 per day for each day after September 1, 1983 until the date of entry of judgment.

| Total amount | $99,647.00 |
|---|---|
| Less amount due Todd from Auto | −4,110.00 |
| Principal | $95,537.00 |
| Interest from January 28, 1976 to September 11, 1980 | 20,239.00 |
| Interest from September 12, 1980 to September 11, 1981 | 12,139.00 |
| Interest from September 12, 1981 to September 1, 1983 | 34,104.00 |
| Total principal plus pre-judgment interest to September 1, 1983 | $162,019.00 |
| Daily interest after September 1, 1983 until date of entry of judgment | $53 per day |

(G) Turbine Service recovers from Todd the amount owed on their contract in the sum of $125,818.75 together with pre-judgment interest of $129,457.00 to September 1, 1983, plus daily interest of $84 per day for each day after September 1, 1983 until the date of entry of judgment.

| Principal | $125,818.75 |
|---|---|
| Interest from May 24, 1975 to September 11, 1980 | 56,597.00 |
| Interest from September 12, 1980 to September 11, 1981 | 19,127.00 |
| Interest from September 12, 1981 to September 1, 1983 | 53,733.00 |
| Total principal plus pre-judgment interest to September 1, 1983 | $255,275.75 |
| Daily interest after September 1, 1983 until date of entry of judgment | $84 per day |

(H) Gonzales recovers from Turbine Service the amount owed on their contract in the sum of $50,065.00 together with pre-judgment interest of $51,513.00 to September 1, 1983, plus daily interest of $33 per day for each day after September 1, 1983 until the date of entry of judgment.

| Principal | $50,065.00 |
|---|---|
| Interest from May 24, 1975 to September 11, 1980 | 22,521.00 |
| Interest from September 12, 1980 to September 11, 1981 | 7,611.00 |
| Interest from September 12, 1981 to September 1, 1983 | 21,381.00 |
| Total principal plus pre-judgment interest to September 1, 1983 | $101,578.00 |
| Daily interest after September 1, 1983 until date of entry of judgment | $33 per day |

## II. ATTORNEY'S FEES AND COSTS

As the ninth anniversary of the filing of this lawsuit approaches, one last task remains to be completed before the court can breathe free of *Todd Shipyards.* Although the court's original decision in this case directed that Auto recover costs and attorney's fees, the determination of the exact amount due was left for a later date. *Todd,* 467 F.Supp. at 1311. That date is now upon us and the court immerses itself once more in *Todd's* tangled realm mindful of all that has come before and fortified in this final foray into *Todd's* voluminous record by the conviction that our efforts here will, at last, dispose of this case.[4]

The court has come this way before. In the year following the entry of the original judgment, the court made its initial attempt to ascertain the fees and costs due Auto. As a preliminary measure necessary to the determination of a fair and reasonable award, the court ordered Auto to "provide an explicit account ... of *how* various blocks of time were spent (i.e. the specific legal activity conducted) and to *what part*

---

**4.** *Todd* was the longest non-jury maritime trial in the history of the Eastern District of Louisiana, consuming 67 trial days over a six-month period. The court heard testimony from 28 witnesses and the trial transcript is in excess of 10,000 pages. Additionally, there were over 7000 pages of depositions and more than 600 exhibits offered. The record on appeal ran to 83 volumes. *Todd,* 674 F.2d at 405 n. 1.

*of the case* the time was devoted." Minute Entry of May 4, 1979, record document 275 (emphasis in original). In plain language, the court's Minute Entry put Auto on notice that failure to provide a specific, detailed breakdown in support of the amounts sought would result in the denial of an award on those points not made clear to the court. *Id.*

Thereafter, during the pendency of the appeal, the court held a hearing on attorney's fees and costs. At the hearing, the court heard testimony from Messrs. Donald F. Mooney, William A. Ransom, III and Francis Emmett. Mr. Mooney served as lead counsel for Auto in this matter and Mr. Ransom, a member of the New Orleans firm of Chaffe, McCall, Phillips, Toler & Sarpy (Chaffe McCall), assisted as local counsel. Mr. Emmett is a New Orleans attorney whose testimony Auto offered on the customary fee for litigation of this nature in this district.

Rather than leading to a prompt resolution of the issues, the hearing raised more questions than were answered. The defendants raised three principal objections. Defendants objected to amounts claimed for fees and expenses incurred in connection with Auto's unsuccessful claim for damages in connection with the Cork casualty. They objected to any award of fees for the work of Auto's local counsel or for work performed by Mr. Mooney's associates. Defendants also objected to the award of any litigation expenses incurred by Auto or its counsel over and above those amounts taxable as costs under 28 U.S.C. § 1920.

As a result of these and other objections and Auto's failure to document its claims with sufficient specificity, the hearing, in the final analysis, was of only minimal use.

Given the multiple objections made by the defendants and the concessions made by Auto's counsel, no calculation of fees could be made at the time of the hearing. The court ordered counsel for Auto to re-submit its claim to take account of the concessions made and to respond to the defendant's objections.

No further action on this aspect of the matter was taken until after the Fifth Circuit rendered its decision affirming the judgment in part, reversing in part, and remanding the case to this court for further proceedings. Among the portions of the judgment that were affirmed was the court's decision to award Auto attorneys' fees. *Todd,* 674 F.2d at 424. The submissions of the parties on remand resuscitated the dispute over fees.

## A. ATTORNEYS' FEES

Our path through Auto's disordered claim for attorneys' fees is smoothed by the guidelines originally set out in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). *Johnson* listed twelve factors that must be considered in making a fee award.[5] *Johnson,* 488 F.2d at 717–19. In the decade since *Johnson* was decided, the Fifth Circuit has repeatedly insisted that the twelve *Johnson* factors control the computation of attorney's fees by the district courts. *Riddell v. National Democratic Party,* 545 F.Supp. 252 (S.D. Miss.1982). *See, e.g., Copper Liquor, Inc. v. Adolph Coors Co.,* 624 F.2d 575, 581 (5th Cir.1980) (*Copper Liquor II*). *See also Hensley v. Eckerhart,* 461 U.S. 424, 434 n. 9, 103 S.Ct. 1933, 1940 n. 9, 76 L.Ed.2d 40 (1983) (approving the use by district courts of the *Johnson* guidelines). In awarding attorney's fees, the district court is empowered to exercise its informed discretion.

---

**5.** The *Johnson* factors are (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amounts involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson,* 488 F.2d at 717–19. Four of the *Johnson* factors deserve "special heed": (1) the time and labor involved, (5) the customary fee, (8) the amount involved and the results obtained, and (9) the experience, reputation, and ability of counsel. *Copper Liquor II,* 624 F.2d at 583.

*Graves v. Barnes,* 700 F.2d 220 (5th Cir. 1983). The district judge is required, however, to "explain the findings and reasons upon which the award is based, including an indication of how each of the twelve factors affected his decision." *Copper Liquor II,* 624 F.2d at 581.

The Fifth Circuit has adopted the "lodestar" method of calculating attorney's fees as a refinement of the *Johnson* test. *Graves,* 700 F.2d at 222. Under this method, the lodestar is determined by the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. The lodestar is then adjusted to reflect other *Johnson* factors that may be of significance in the particular case. *See Copper Liquor III,* 684 F.2d at 1093; *Copper Liquor II,* 624 F.2d at 583.

■ Put another way, our initial task is to establish the basic fee or lodestar amount by multiplying a reasonable hourly rate by the number of hours reasonably expended in the litigation. *Riddell,* 545 F.Supp. at 256 (citations omitted). Once established, the lodestar may then be adjusted upwards or downwards to take into account the other *Johnson* factors. *Id.*

1. *Reasonable Hourly Rate: the Customary Fee*

Our first duty, therefore, is to ascertain a reasonable hourly rate for the legal services rendered. In this regard, *Johnson* "commands attention to customary fees in the locality." *Knighton v. Watkins,* 616 F.2d 795, 800 (5th Cir.1980). Closely bound up with this inquiry is an evaluation of the fee scales in light of the skill, experience, and reputation possessed by the particular attorneys involved. *See Johnson,* 488 F.2d at 718–19; *Hensley,* 103 S.Ct. at 1940 n. 9.

■ Absent a demonstration that the services and expertise of a *particular* attorney were required, the relevant community is the one in which the district court sits regardless of the fact that work must be performed away from the district court's community or that high-priced attorneys come into jurisdictions with much lower market rates. *Donnell v. United States,* 682 F.2d 240, 251–52 (D.C.Cir.1982); *Riddell,* 545 F.Supp. at 256. No such claim having been advanced here, we conclude, in the first instance, that the customary fees in New Orleans, Louisiana, are applicable and are to guide our determination of a reasonable hourly rate.

■ During the course of this litigation, Auto was represented by both New York and New Orleans counsel. The two sets of attorneys have submitted separate requests for compensation and, for the sake of clarity, they will be considered separately. The rates of Mr. Mooney, Auto's New York counsel, were set according to three independent criteria—the experience of the attorney, the date of the work, and whether the work was in court or not. As set forth in the stipulation of July 19, 1979, Mr. Mooney and his two associates, Messrs. O'Connor and Cacciatolli, billed at rates ranging from a high of $100 per hour for Mr. Mooney's trial time to a low of $40 per hour for the pre-trial work of the associates.[6] *See* Appendix A to Auto's Prehearing Brief on Costs and Attorney's Fees.

For its part, Chaffe McCall, associate counsel in this case, offered into evidence at the hearing on fees an exhibit showing the various billing rates of its attorneys and other personnel. *See* Hearing Exhibit

---

**6.** For the work done in advance of trial, Mr. Mooney charged $60 per hour for his time and $40 per hour for the time spent by his associates. (October 6, 1975 to November 14, 1977).

During the course of the trial, Mr. Mooney charged $100 per hour for time spent in court, $75 per hour for other time, and $50 per hour for his associates' time. (November 14, 1977 to September 15, 1978).

For post-trial work performed from the date of entry of the court's decision until the date of the denial of the last motions for new trial, Mr. Mooney charged $75 per hour for his time and $50 per hour for that of his associates. (September 15, 1978 to January 29, 1979).

M. Chaffe McCall attorneys billed at rates ranging from $40 to $95 per hour.[7]

These fee scales reflect the differences in experience among the attorneys. Mr. Mooney brought more than a quarter century of legal experience to the trial of this matter. His two associates, both recently admitted to practice, naturally commanded lower rates for their time. Mr. Ransom, a partner at Chaffe McCall, had some ten years experience in admiralty and maritime matters at the time of the trial.[8]

In support of their claim that the rates charged were fair and reasonable in view of the customary fee for similar work in this district, counsel for Auto offered the testimony of Mr. Francis Emmett. A practitioner with more than twenty-five years experience in the courts of this district, Mr. Emmett testified that the hourly rates charged were reasonable and generally below the rates for comparable services customarily commanded by admiralty attorneys in this port city.[9]

In light of Mr. Emmett's testimony, our own knowledge of prevailing rates in this district, and the herculean demands of this lawsuit, we conclude that the rates requested by counsel for Auto are reasonable, with one exception.[10] This "blockbuster" case demanded the utmost in organization and preparation on the part of Auto's counsel.

*See Todd,* 674 F.2d at 405 n. 1. Throughout a trial that seemed capable of continuing beyond all endurance, counsel for Auto faced the task of overcoming the united front presented by the defendants. *Todd,* 467 F.Supp. at 1270. As the record documents, the case was contested every step of the way. The court is convinced that counsels' particular skill and experience in this specialized area of practice was of immeasurable assistance to Auto and to the Court. We will, therefore, employ these rates in the initial calculation of the lodestar and, thereafter, adjust the award as necessary in accordance with the *Johnson* factors which may apply.

### 2. *Hours Reasonably Expended: Time and Labor Required*

We have already described the gargantuan qualities of this case. Thus, it comes as no surprise that the court now finds itself reviewing a request for compensation for some four thousand (4,000) hours of attorney time. Counsel for Auto has provided the court and the defendants with voluminous time and billing records in support of its claim. Auto's counsels' initial statements and summaries were prepared in advance of the hearing on fees. These documents were introduced into evidence at the hearing on fees together with a stipulation of all parties that the hours claimed

---

7. Mr. Ransom was the Chaffe McCall attorney who did the most work on this case. His stated billing rate is $60 per hour. Mr. Sarpy, a senior partner, billed 17.25 hours at $95 per hour. Associates in the firm billed at the rate of $40 per hour and work done by non-legal personnel was billed at the rate of $25 per hour or less. The billing schedule makes no distinction between trial and non-trial time. Nor do the rates vary according to the date of the work.

8. According to the stipulation of the parties, Mr. Mooney was admitted to practice law in New York State in 1952 and his law practice since then has been devoted primarily to maritime matters, including the trial and arbitration of maritime disputes. Mr. O'Connor was admitted to practice in 1976 and Mr. Cacciotolli in 1978.

Mr. Ransom was first admitted to practice law in the state of Tennessee in 1968 and in 1970 he was admitted to practice in Louisiana. His practice is devoted almost exclusively to admiralty and maritime matters.

9. In the course of his legal career, Mr. Emmett has been a member of four of the largest and most active admiralty firms in New Orleans. The court accepted him as an expert witness on the reasonableness of the fees charged on this basis. Mr. Emmett, of course, had had no prior involvement with the case.

10. We note that defendants declined to offer evidence at the hearing and made no suggestion that the fees in New Orleans were lower than the requested rates. Defendants objected only to the $95 per hour figure for Chaffe McCall senior partner Sarpy's time. On this point, we agree. We conclude that $60 per hour is a reasonable rate for the services of all of the Chaffe McCall partners who worked on this case. We make no modification in the rates requested for the work of associates or other employees of the firm. We also make no modification in the rates submitted by Mr. Mooney.

were, in fact, incurred. At the hearing, however, defendants objected to the size of the claim on the grounds that it included time spent pursuing the unsuccessful Cork casualty claim, that there was duplication of effort by lead and local counsel and that a number of other minor items were improperly included. As a result, the court ordered counsel for Auto to prepare a revised statement parsing out the amounts related to the disputed subjects and further making reductions in accordance with the concessions volunteered by Mr. Mooney at the hearing.

■ Mr. Mooney incorporated these revisions in a set of supplements to the exhibits introduced at the hearing. The court, of course, has undertaken its own independent scrutiny of the time and billing records in light of the objections raised and the revisions made. The court brings to this painstaking review a hard-won familiarity with this case in all its stages and permutations. We are aware that the defendants were unwilling to enter into a single stipulation during the trial and that Auto was forced to prove every aspect of its case, in all its minutiae. Moreover, Auto's witnesses were routinely subjected to repetitive cross-examination by three and sometimes four defense attorneys. All of this contributed to the length of the case and, ergo, to the magnitude of the fee request. Seen in this perspective, Auto's claim for approximately a quarter of a million dollars in fees appears less staggering. Nevertheless, an applicant for attorneys' fees is only entitled to an award for time reasonably expended. The amount of time actually expended does not necessarily equal the time reasonably expended. *Riddell*, 545 F.Supp. at 257 (citations omitted). We, therefore, turn now to a consideration of defendants' objections to the amount claimed.

### (a) *Cork*

■ This case arose out of an attempt by Auto to recover damages for faulty repairs to the turbine of its vessel KATRIN. *Todd*, 467 F.Supp. at 1267. Auto subsequently amended its complaint to include a claim against the repairers in connection with the loss of the vessel in the Cork casualty. *See Todd*, 467 F.Supp. at 1268, 1299. Auto succeeded in proving the defendants liable for negligent repair of the turbines and for breach of the warranty of workmanlike performance. *Todd*, 467 F.Supp. at 1269. The judgment of the court, however, expressly exonerated the defendants from any liability resulting from the failure of the ship's turbines off the coast of Cork, Ireland. The award of attorneys' fees in this case is, therefore, limited to services performed in connection with the claims on which Auto prevailed. *See Hensley*, 103 S.Ct. at 1940.

Auto's initial fee request, however, was a blanket one. The time records and summary statements it submitted for the hearing on fees made no distinction between time spent on Cork and its principal claim for faulty repair of the turbine. At the hearing, the court instructed counsel for Auto to adjust its statement to eliminate all claims for fees and expenses incurred in connection with the Cork casualty. Supplement A to Exhibit A constitutes Mr. Mooney's attempt to make this adjustment. No such revision was prepared by Chaffe McCall.

Supplement A contains a summary of the deductions made for fees incurred in connection with the Cork casualty. The summary is drawn from those items identified with a "C" in Mr. Mooney's time records. *See* Hearing Exhibit A–7. As Mr. Mooney stated at the hearing, his deductions for Cork were based more on his recollections of the case than a complete review of the record. Hearing Tr. at 81, 112. At any rate, Mr. Mooney deducted roughly $18,000 in fees attributable to work on Cork.[11]

---

11. The specific deductions are as follows:

(a) For the period prior to trial:

| | | | |
|---|---|---|---|
| Mooney | 82.25 hours at $60 per hour | = | $4,935.00 |
| Associates | 9.75 hours at $40 per hour | = | 390.00 |

(b) For the period of the trial:

| | | | |
|---|---|---|---|
| Mooney | 59.00 hours at $100 per hour | = | $5,900.00 |
| | 84.75 hours at $75 per hour | = | 6,356.00 |
| Associates | 3.50 hours at $50 per hour | = | 175.00 |
| TOTAL ....... | | | $17,756.00 |

In response, the defendants have not directly challenged any single item or the summary itself. Instead, the defendants have proposed a wholesale reduction of the fee award in the proportion the Cork claim bore to the entire amount sought in this case. Damages sought for the Cork casualty were nearly three times greater than the rest of Auto's claim. Accordingly, the defendants would have the court reduce any fee award by some seventy-five (75%) percent to reflect the disparity between the amount sought and the amount recovered.[12]

■ The court is unpersuaded that it should adopt any so mechanistic a solution. *Hensley*, 103 S.Ct. at 1940 n. 11. Although the court recalls the vigor and effort that went into Auto's pursuit of the Cork claim, defendants' formula vastly overstates the amount of time devoted to Cork. Measured by dollar value alone, of course, Cork was by far the larger claim. Nonetheless, there can be no doubt that the key issue and principal contest in this lawsuit was over responsibility for the faulty turbine repair.[13]

Rather than adopt the simplistic proration formula proposed by the defendants, the court has chosen to make a thorough review of the actual time records. Although this review is made more difficult by the cryptic nature of many of the entries, the court has been able to determine that, as might be expected, the amount attributed to Cork is underestimated.[14] Based on this examination and on the court's own recollection of the time devoted to Cork at trial, it is the court's judgment that a reduction of fifteen (15%) percent in the amount of time originally claimed represents a reasonable allocation of time to Cork.

For its part, Chaffe McCall has completely failed to adjust its claim to reflect time spent on Cork. At the hearing, Mr. Ransom testified that after a review of his time records, expense documents, and the trial record, it was his best estimate that he had devoted between sixty (60) and seventy (70) hours to Cork. The bulk of these hours constituted trial time.[15] In the court's view, it would be more accurate to make a larger reduction. Accordingly, the court has determined to reduce the Chaffe McCall claim by ten (10%) percent to take account of time spent on Cork.

### (b) *Duplication*

Defendants' second principal contention is that the award of fees should be limited to one attorney, Mr. Mooney, Auto's lead counsel in this matter. Citing *Grigsby v. Coastal Marine Service of Texas, Inc.*, 317 F.Supp. 1113 (W.D.La.1969), the defendants claim that the retention of local counsel and their participation in the case was a matter of convenience to Mr. Mooney and that they should not be expected to pay for opposing counsel's convenience. In addi-

---

No deduction has been made for the period after the entry of judgment. A review of the time records reveals no work performed in connection with Cork.

**12.** Sentry suggests a 76.6% reduction, Travelers a 71.4% one. Sentry Reply Memorandum at 21; Travelers Response Memorandum at 3.

**13.** This is confirmed by the comparatively small amount of testimony devoted to Cork. Only 3 of the 28 trial witnesses devoted a substantial part of their testimony to Cork (Harrison, Higgins and Tripolitis). Less than 10% of the trial transcript has to do with Cork.

**14.** For example, Mr. Mooney deducted only 10 of the 17.75 hours listed for October 21, 1977. He travelled that day from London to Dublin to meet with Mr. Higgins in preparation for the deposition of Peter Harrison. Harrison's testimony had direct bearing only on the Cork casualty. Reductions from other entries in the aftermath of the Cork loss also seem to understate the amount of time devoted to investigation and preparation of this unsuccessful claim. *See, e.g.* entry of February 17 to March 3, 1977, Hearing Exhibit A-7 at 21.

**15.** Mr. Ransom based his estimate on his attendance at the trial during the testimony of witnesses Palios, Tripolitis, Koulouris, Higgins, Harrison, O'Brien and Middlemiss. Harrison and Tripolitis testified exclusively on Cork and Higgins devoted at least one-quarter of his testimony to the subject. Harrison was on the stand for four days, Tripolitis one day, and Higgins for eleven days. Some of the other witnesses listed also testified about Cork. Mr. Ransom's estimate, therefore, appears to be too low.

tion, the defendants object to the allowance of any award for the time of Mr. Mooney's two associates in the case.

■■■ We believe it axiomatic that there can be no recovery for duplicative services rendered by Auto's counsel. *See Copper Liquor III*, 684 F.2d at 1095–96. This principle applies regardless of whether the work was performed for the second time in-house or by an allied law firm. If Mr. Vincent researched the same questions as Mr. Cacciotolli, the court would deny recovery for the duplication of effort. On the other hand, the mere retention of a second law firm to aid in the trial of a case as complicated as *Todd* does not necessarily prevent the second firm from recovering for its time. There would be little reason to associate counsel if the second firm performed solely duplicative functions.

The court does not doubt that the presence of local counsel was of great practical assistance to Mr. Mooney. His office is in New York, not New Orleans. In addition to facilitating communication with the court, Chaffe McCall attorneys assisted with research, prepared court papers, and attended conferences and depositions. Mr. Ransom did "second-chair" the trial in part. Mr. Ransom's presence in court was of assistance to Mr. Mooney in view of the cooperation displayed during the trial by the defendants. It was also of assistance to the court inasmuch as Mr. Ransom was able to substitute for Mr. Mooney and carry the trial forward in Mr. Mooney's absence.

■■■ An award of attorneys' fees is not limited solely to one attorney per case. *See, e.g., Johnson*, 488 F.2d at 715; *Graves*, 700 F.2d at 224; *Hensley*, 103 S.Ct. at 1936. Therefore, defendants' blanket objection at the hearing to the introduction of the time records of Mr. Mooney's associates and Chaffe McCall is misplaced.

Defendants again identified no specific item or area of duplication. Mr. Mooney and Mr. Ransom both testified that duplication of function was minimal. The court, however, has reviewed the time records of the attorneys in minute detail and is not prepared to say no duplication of effort took place. Accordingly, the court will reduce the amount of time spent by ten (10%) percent to account for duplication.

(c) *Additional Deductions*

■■■ At the hearing, Mr. Mooney conceded that his time records included small amounts of time that did not appear to be properly chargeable to this case. These hours were incurred in the period prior to trial and will be deducted in the calculation of the lodestar figure. At the hearing, the court also instructed Mr. Mooney to deduct from his claim time spent in transit between New York and New Orleans. Supplement B to Exhibit A itemizes the travel time deducted from the claim. These amounts will also be deducted in the calculation of the number of hours reasonably expended.[16] Additionally, Mr. Mooney's time records identified and segregated time spent on the Siemens cross-claim and certain disputes between Todd and Auto, including work done in connection with Todd's arrest of the vessel. The court finds that the relatively small amount of time expended on these matters was reasonable. Inasmuch as these matters were intimately related to the principal dispute between the parties, no deduction will be made for this time. Nor does the court feel a division of responsibility among the defendants for these amounts is warranted.

We are now in a position to calculate the number of hours reasonably expended by counsel for Auto. We conclude that counsel for Auto actually expended the times itemized and employ these figures in our calculation.[17] Based on the calculations set

---

**16.** The amounts to be omitted are 6.25 hours for Mr. Mooney and 2.00 hours for his associates. See Hearing Exhibit A–7. The amounts to be deducted for travel time are 65 hours for Mr. Mooney in advance of trial and 31 hours during trial. In addition, 8 hours are to be deducted

for associate travel time during trial. Supplement B to Exhibit A.

**17.** The total time expended by Mr. Mooney and his associates is taken from the stipulation of the parties dated July 19, 1979. For Chaffe

forth in the table below, we conclude, for the purpose of obtaining a lodestar figure, that the number of hours reasonably expended is 2936.75.

#### Hours Reasonably Expended

In advance of trial:

| | | | | | | |
|---|---|---|---|---|---|---|
| Mooney | 1380 hours | x | [1.00 – (.15 + .10)] | – (65 + 6.25) | = | 963.75 hours |
| Associates | 120 hours | x | [1.00 – (.15 + .10)] | – 2.00 | = | 88.00 hours |

During trial:

| | | | | | | |
|---|---|---|---|---|---|---|
| Mooney | 473 hours court time | x | [1.00 – (.15 + .10)] | · | = | 354.75 hours |
| | 605 hours other time | x | '' '' | | = | 422.75 hours |
| Associates | 124 hours | x | '' '' | | = | 85.00 hours |

Post-trial:

| | | | | | |
|---|---|---|---|---|---|
| Mooney | 54.5 hours | x | (1.00 – .10) | = | 49.05 hours |
| Associates | 78.5 hours | x | '' '' | = | 70.65 hours |

Hours expended by Chaffe McCall:

| | | | | | |
|---|---|---|---|---|---|
| Ransom [*] | 952.00 hours | x | [1.00 – (.10 + .10)] | = | 761.60 hours |
| Associates | 152.75 hours | x | '' '' | = | 122.20 hours |
| Others | 23.75 hours | x | '' '' | = | 19.00 hours |

TOTAL NUMBER OF HOURS REASONABLY EXPENDED: 2936.75 HOURS

[*] This figure includes 21.25 hours expended by other partners at Chaffe McCall.

The lodestar is calculated in the table below.

#### Lodestar Amount

Work performed in advance of trial:

| | | | |
|---|---|---|---|
| Mooney | 963.75 hours x $60 per hour | = | $57,825.00 |
| Associates | 88.00 hours x $40 per hour | = | 3,520.00 |

Work performed during trial:

| | | | |
|---|---|---|---|
| Mooney | 354.75 hours x $100 per hour | = | 35,475.00 |
| | 422.75 hours x $ 75 per hour | = | 31,706.25 |
| Associates | 85.00 hours x $ 50 per hour | = | 4,250.00 |

Work performed post-trial:

| | | | |
|---|---|---|---|
| Mooney | 49.05 hours x $ 75 per hour | = | 3,678.75 |
| Associates | 70.65 hours x $ 50 per hour | = | 3,532.50 |
| Sub-Total | | | $139,987.50 |

Chaffe McCall

| | | | |
|---|---|---|---|
| Ransom | 761.60 hours x $60 per hour | = | $45,696.00 |
| Associates | 122.20 hours x $40 per hour | = | 4,888.00 |
| Others | 19.00 hours x $25 per hour | = | 475.00 |
| Sub-Total | | | $51,059.00 |
| Total | | | $191,046.50 |

### 3. Adjustments to the Lodestar

▮ Having determined the lodestar amount, we must now address the remaining *Johnson* factors. The burden of justifying any deviation from the lodestar rests on the party proposing the deviation. *Copeland v. Marshall,* 641 F.2d 880, 892 (D.C.Cir.1980). Defendants have not proposed any particular deviation based on one or the other of the Johnson factors. Nonetheless, we have carefully considered the factors not previously applied and have come to the conclusion that no adjustment in the lodestar figure is called for.

McCall, we rely on Exhibit M, introduced at the hearing on fees and costs. The number of hours was not questioned.

We share the Supreme Court's conviction that many of the *Johnson* factors are inescapably subsumed within the initial calculation of hours reasonably expended and the reasonable hourly rate. *Hensley*, 103 S.Ct. at 1940 n. 9. The effect of any novel or difficult questions of law which this case presented is already comprehended by the assessment of the number of hours reasonably expended. Counsel demonstrated throughout the skill requisite to handle this technical and complicated litigation. As previously noted, counsels' experience and ability in maritime matters is considerable and the rates they commanded for their work reflect this. The reasonable hourly rates used in the lodestar calculation incorporate the court's view of counsel's competence and handling of this case. No further adjustment is necessary.

Several *Johnson* factors simply have little relevance to this case. Counsel has not asserted that the acceptance of this case precluded other employment. No conflicts of interest were disclosed. Further, the time records submitted by counsel indicate that this case involved a percentage of the attorneys' business hours comparable to that of any protracted litigation which proceeds to judgment. The fee was fixed and counsel has already been paid by their client. No suggestion has been made that Auto imposed any burdensome time limitations on counsel. Counsel face no hardship in their respective communities due to the undesirability of this case; before it became such a monster many admiralty attorneys would gladly have accepted the file. Counsel have not previously represented

Auto and this factor is, therefore, not relevant.

This is not, to be sure, a civil rights case involving significant constitutional principles or rectifying a wrong suffered by an entire class of citizens. *See, e.g., Johnson*, 488 F.2d at 718, *Riddell*, 545 F.Supp. at 261. Auto's claims are of little or no import to any but the parties before the court. Nonetheless, plaintiff succeeded in pinning liability on the defendants and obtained substantial damages in recovery. The lodestar amount is in fair proportion to the damages recovered and defendants have articulated no exception to the general rule that the lodestar not be reduced absent exceptional circumstances. *See, Hensley*, 103 S.Ct. at 1942. *Copper Liquor III*, 684 F.2d at 1092–93.

Finally, the court is unaware of the size of any fee awards in similar cases but is convinced the award falls within reasonable bounds for a case of this duration and complexity. Moreover, we note that the amount of time expended might very well have been less had defendants not been so inflexible in their litigation tactics.

None of these factors require an adjustment to the lodestar figure. Accordingly, the court concludes that Auto is entitled to an award of attorneys' fees in a total amount of $191,046.50, as set out above.

B. COSTS

 Rule 54(d) of the Federal Rules of Civil Procedure provides that costs shall be allowed as a matter of course to the prevailing party.[18] The award of costs is

---

18. A party need not prevail on all issues to justify an award of costs. *United States v. Mitchell*, 580 F.2d 789, 793 (5th Cir.1978). Inasmuch as we have already established that Auto is the prevailing party in this case, we have proceeded to a review of its Bill of Costs.

. Auto filed its Bill of Costs on August 8, 1980. Some six weeks later, the matter came on for hearing before the Clerk of Court. At the hearing, the defendants raised objections to the Bill of Costs as submitted. The Clerk granted the parties time to prepare additional memoranda on the subject and held a series of conferences with counsel over a period of a year or more. No satisfactory breakdown of costs was ever

received from Auto and, in the end, the Clerk was unable to reach a final decision on taxation of costs.

Instead, the Clerk submitted a memorandum on taxation of costs to the court. The memorandum contained the Clerk's preliminary conclusions, but deferred ruling on a number of cost items. The memorandum was signed and dated December 30, 1982—the last date of the Clerk's federal service.

We are, therefore, left without a ruling by the Clerk to which we could attach the presumption of correctness. We have made a *de novo* review of the record and the submissions of the parties

largely controlled by statute. *Studienge-sellschaft Kohle v. Eastman Kodak,* 713 F.2d 128, 132 (5th Cir.1983). Under 28 U.S.C. § 1920, a judge may tax as costs items in six categories.[19] Counsel at the hearing stipulated to the amounts requested in Auto's Bill of Costs for fees of the clerk and marshal, docket fees under 28 U.S.C. § 1923, and subpoenaed witness fees as itemized in the Bill of Costs. The amounts sought for fees for witnesses, trial witness expenses, fees of court reporter, and for costs incident to taking of depositions were contested.[20] We take these matters up in turn.

### 1. Fees for Witnesses

 The starting point for a calculation of taxable costs for witness fees and disbursements is 28 U.S.C. § 1821. Section 1821 provides that "a witness in attendance at any court of the United States, ... or before any person authorized to take his deposition ... shall be paid" an attendance fee, travel allowance and subsistence allowance. The statute was amended on October 27, 1978, shortly after the conclusion of this trial, and the trial witness expenses submitted by Auto have been calculated in accordance with the amended statute.[21] Defendants object that Auto's recovery should be limited to the amounts authorized by Section 1821 as it stood at the time of trial.[22] The court is in agreement with the

defendants on this score and will apply the statutory fees in effect at the time Auto incurred these costs.

Auto has asked that costs be taxed for the expenses of eight trial witnesses.[23] All eight gave testimony material to an issue tried and reasonably necessary to its disposition. Auto has requested the court to tax as costs the actual round-trip airfare (and airport taxi fare) for each witness even though all eight traveled from outside the district and the 100–mile limit of the court's subpoena power. The 100–mile limit has long been regarded as a boundary beyond which a court would not tax travel expenses. *See Farmer v. Arabian American Oil Co.,* 379 U.S. 227, 231–32, 85 S.Ct. 411, 414–15, 13 L.Ed.2d 248 (1964). In *Farmer,* however, the Supreme Court, while acknowledging the vitality of the 100–mile rule, also made it plain that the district court has discretion to tax as costs expenses for transporting witnesses more than 100 miles. *Id.*

 In this circuit, a court may assess costs for journeys of more than 100 miles if there are special circumstances justifying the presence of the witnesses at trial. *Nissho-Iwai Co., Ltd. v. Occidental Crude Sales,* 729 F.2d 1530, 1551 (5th Cir. 1984) *citing Goodwin Brothers Leasing v. Citizens Bank,* 587 F.2d 730 (5th Cir.1979). The factors to be considered are (1) the

---

with particular care lest we, too, carry this case until our retirement.

**19.** The statutory categories are the following:
(1) Fees of the clerk and marshal;
(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
(5) Docket fees under Section 1923 of this title;
(6) Compensation for court appointed experts, compensation for interpreters and salaries, fees, expenses, and costs of special interpretation services under Section 1821 of this title.
The statute was amended October 28, 1979 to add the sixth category.

**20.** These amounts are itemized in Appendices 1–3 to the Bill of Costs.

**21.** As amended, section 1821 provides for attendance fees of $30 per day, payment for the actual travel expenses of a witness who travels by common carrier at the most economical rate reasonably available, and a subsistence allowance when an overnight stay is required in an amount not to exceed the maximum per diem allowed federal employees. 28 U.S.C. § 1821.

**22.** Prior to its amendment, section 1821 permitted a $20 attendance fee, $16 per diem subsistence allowance and a mileage allowance of $.10 per mile.

**23.** The Bill of Costs included a claim for the expenses of a ninth trial witness, Constantin Tripolitis, captain of the KATRIN. Auto has since waived its claim for Captain Tripolitis and we will not consider it. *See* Supplement A to Exhibit B and C.

relevance and necessity of the witness' testimony and (2) the existence of court approval before the incurrence of travel expenses. *Goodwin*, 587 F.2d at 734. Auto did not obtain court approval before incurring the travel expenses of these trial witnesses. We recognize, however, that each of these witnesses had personal knowledge of the facts or singular technical expertise, or both, which made their testimony necessary to the disposition of the case and which, in the court's view, justifies taxing their travel costs beyond the 100–mile limit.[24] By so holding, we do not intimate that we consider the 100–mile rule antiquated

beyond all meaning in view of the international cast of characters often to be found in major maritime litigation. The better practice is to obtain prior court approval for travel expenses; were this not a special case, we would not depart from this principle.

Fees for witnesses are allowed at the rate of $20.00 per day of attendance together with a per diem subsistence allowance of $16.00 and a travel reimbursement of ten cents per mile or the actual travel expenses, in accordance with the limitations established by 28 U.S.C. § 1821, as set forth in the table below.

### FEES FOR WITNESSES

| Witness | (a)<br>Mileage/Actual Expenses | | Subsistence<br>x days | | (b)<br>Fee x days | | Total |
|---|---|---|---|---|---|---|---|
| Higgins | | | | | | | |
| (1st trip) | 827.60 | ⊦ | 16.00(8) | + | 20.00(8) | = | $1,115.60 |
| (2nd trip) | 0 (c) | ⊦ | 16.00(11) | + | 20.00(11) | = | 396.00 |
| Kugler | 2364 miles (.10) | ⊦ | 16.00(5) | + | 20.00(5) | = | 416.40 |
| O'Brien | 1348 miles (.10) | ⊦ | 16.00(2) | ⊦ | 20.00(2) | = | 206.80 |
| Harrison | 960.00 | ⊦ | 16.00(8) | ⊦ | 20.00(8) | = | 1,248.00 |
| Van Rynbach | 2364 miles (.10) | ⊦ | 16.00(3) | + | 20.00(3) | = | 344.40 |
| Harvey | 1774.20 | + | 16.00(6) | ⊦ | 20.00(6) | = | 1,990.20 |
| Palios | 973.11 | + | 16.00(10) | + | 20.00(10) | = | 1,333.11 |
| Koulouris | 1227.91 | ⊦ | 16.00(17) | + | 20.00(17) | = | 1,839.91 |
| TOTAL | | | | | | | $8,890.42 |

(a) Section 1821 provides that "in lieu of the mileage allowance...witnesses who are required to travel...to and from the continental United States, shall be entitled to the actual expenses of travel at the lowest first-class rate available at the time of reservation for passage, by means of transportation employed". Higgins, Harrison, Harvey, Palios and Koulouris all traveled from Europe and their actual travel expenses have been taxed as costs. *Cf. Farmer*, 379 U.S. at 238, 85 S.Ct. at 418 (Goldberg, J., concurring). Kugler, O'Brien, and Van Rynbach traveled from points within the United States and their travel expenses have been taxed in accordance with the then prevailing mileage allowance of ten cents per mile.

24. *See* the Appendix to the court's original opinion for an identification of each player and his role. 467 F.Supp. at 1313–15. Higgins, O'Brien and Harrison presented both factual and expert testimony. Kugler, a leading authority on welding, and Harvey were expert witnesses. Van Rynbach conducted an initial survey of the damage for Auto. Palios was the president of Auto and Diana Shipping, owners and operators of the vessel KATRIN. Koulouris was employed by Diana and managed the KATRIN's books.

Defendants objected to the taxation of any costs for Palios on the basis of his status as an officer and shareholder of Auto. Officers and directors of corporations remain entitled to recover statutory witness fees and travel expenses so long as they do not participate in the litigation to the extent that they become identified as parties in interest. They do not become identified as parties in interest solely because of their relationship to the corporation. Bartell, *Taxation of Costs and Awards of Expenses in Federal Courts*, ALI–ABA Course of Study Materials: Civil Practice and Litigation in Federal and State Courts 675, 699 (1982). The court does not consider Palios to have become a party in interest here.

(b) Pursuant to section 1821, a witness is entitled to per diem fees and subsistence allowances "for each day's attendance and for the time necessarily occupied in going to and from...his place of residence." The court has checked the record for the dates each witness testified and made a number of slight adjustments to the days claimed in the Bill of Costs. All witnesses necessarily required a travel day to go to and from this district and these days have been included in the calculation of costs.

Koulouris testified for only one day at the beginning of the trial. He had, however, been brought from Greece to New Orleans some two weeks before for the purpose of taking his deposition. The deposition was scheduled by the defendants, but never taken. It would be unreasonable to expect Auto to incur the additional expense of flying the witness back and forth to Greece shortly before the scheduled start of trial. The court has determined, therefore, to tax as costs his per diem allowances for the intervening days. *See Nissho-Iwai*, at 1553.

(c) Higgins' testimony was interrupted before cross-examination could begin in order to permit him to attend to his own business affairs. This was a matter of convenience to the witness and defendants are not to be taxed with the additional cost of his return trip to New Orleans. Allowances for the two travel days for the second trip are likewise excluded.

---

## 2. Fees of the Court Reporter

Auto has included in its Bill of Costs an itemized request for taxation of the costs of the court reporter for transcripts of trial testimony. In support of this claim, Auto submits that the trial was long, complex and technical, and that the use of the transcripts minimized time-wasting disagreement over the prior testimony of the parade of witnesses in this case. Auto further submits that it was selective in its demands on the court reporter and did not order unnecessary transcripts.

Costs of the court reporter are recoverable if the particular transcript was necessarily obtained for use in the case. 28 U.S.C. § 1920(2). We agree that this case was long, complex and technical. We cannot, however, concur with Auto's assessment of its selectivity. A review of the record shows that Auto requested the court reporter transcribe the testimony of all but a few witnesses. The testimony transcribed covers approximately three-quarters of the trial. Rule 54(d) does not give us unrestrained discretion to tax costs to reimburse a winning litigant for every expense he has seen fit to incur in the conduct of his case. *Farmer*, 379 U.S. at 235, 85 S.Ct. at 416.

■ On one score, however, the transcripts were necessarily obtained. When the credibility of Jon Sheridan came into question, the transcripts showed contradictions and conflicts with the recollections of counsel and the testimony of other witnesses. For this reason, costs will be taxed for the transcripts of the principal witnesses whose testimony was involved—Sheridan, Bergeron, and Higgins. Transcripts of the trial testimony of all other witnesses were obtained for the convenience of counsel and are not taxable. Costs in this category are taxed as follows:

| | |
|---|---|
| Sheridan, Bergeron | $864.00 |
| Higgins | 1304.00 |
| " | 663.50 |
| Total | $2831.50 |

## 3. Transcript Costs of Depositions

■ Transcript costs of depositions are taxable if reasonably necessary for use in the case. 28 U.S.C. § 1920(2); *Copper Liquor III*, 684 F.2d at 1099. Depositions taken solely for discovery are not taxable as costs. *Bartell, supra* note 24, at 690. Auto has claimed a total of $5,747.67 in costs for transcripts of depositions. In the main, Auto has not demonstrated that it used the depositions at trial rather than for discovery. Accordingly, the request for taxation of costs for the depositions itemized in Appendix 3 to Auto's Bill of Costs is disallowed, with the following exceptions.

| Witness | Use | Amount Allowed [25] |
|---|---|---|
| Taggart | Admitted | $ 523.75 |
| Distelhut, Fritzsche, Hoffroge, Richter | " | 822.96 |
| Sheridan | " | 475.30 |
| Bergeron, Ault | Cross-examination | 194.28 |
| Woods | " | 106.13 |
| Ron Hoover | " | 55.94 |
| McPhate | " | 80.55 |
| O'Neill | " | 148.07 |
| Total | | $2,406.98 |

In sum, costs are taxed in the following amounts.

| | |
|---|---|
| Fees of the Clerk | $ 15.00 |
| Fees of the marshal | 9.40 |
| Docket fees under 28 U.S.C. § 1923 | 20.00 |
| Other costs (subpoenaed witness fees) | 147.80 |
| Fees for witnesses | 8,890.42 |
| Fees of the court reporter | 2,831.50 |
| Costs incident to taking of depositions | 2,406.98 |
| Total | $14,321.10 |

## C. EXPENSES

Auto's demand for reimbursement raises one further subject of controversy. The costs statute, of course, covers only those charges that a successful litigant may recover from his opponent as an incident to the judgment in the action. *Copper Liquor III*, 684 F.2d at 1098. As such, an award of costs generally falls far short of total reimbursement for the expenses of litigation. This is in keeping with the usual American rule that each party bear their own expenses of litigation.

Auto, however, has submitted a claim for disbursements and litigation expenses in eight categories. Auto claims entitlement to these expenses on the basis that the word "costs" in the court's award of "costs and fees" referred to litigation expenses and not taxable costs. *See Todd*, 467 F.Supp. at 1304, 1311. According to Auto, the court would have said "taxable costs" if it had meant to so limit its award. Auto buttresses its argument by citing the state-

ment of the Fifth Circuit that "foreseeable damages recoverable for breach of warranty of workmanlike performance include reasonable attorneys' fees and litigation expenses." *Todd*, 674 F.2d at 415.

■ The court views these statements in a different light. Had we meant litigation expenses, we would have so stated. The term "costs" is universally understood to refer to the statutory costs taxed, in the ordinary case, by the Clerk of Court. "Taxable costs" verges on the redundant. Litigation expenses over and above the amounts taxed as costs may, however, be recovered as a component of a reasonable attorney's fee. *See, e.g., Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir.1981); *Fairley v. Patterson*, 493 F.2d 598, 606 n. 11 (5th Cir.1974). We, therefore, treat Auto's claim for litigation expenses as a matter within the discretion of this court. *Farmer*, 379 U.S. at 235, 85 S.Ct. at 416; *Copper Liquor III*, 684 F.2d at 1098.

25. In several instances, the figure submitted included two or more witnesses in a single cost item. Taggart's deposition was admitted at trial and the defendants agreed to pay 50% of the cost of the Taggart/Van Rynbach deposition. We adopt this agreement inasmuch as the two depositions are of approximately equal length.

In the remaining cases, we have established the proportion the number of pages in the deposition of an allowed witness bears to the total length of the deposition group. We have then allowed costs in the same proportion to the total cost of the depositions concerned.

In addition, we tax only the cost of the original transcript of the deposition of Ron Hoover. $51.00 of the amount sought is for a copy and therefore, disallowed. All other invoices submitted in support of the transcript costs requested are for the original transcript only.

Auto's submissions with respect to litigation expenses cover items normally considered as costs under 28 U.S.C. § 1920 as well as expenditures in categories not specifically recognized by the costs statute. Auto's counsels' disbursement records reflect expenditures for attorney travel expenses, long distance telephone charges, cables, postage, special courier charges, fees of the United States Marshal, expert fees, cost of deposition transcripts, photocopying and translation services. In addition, Auto has made a specific request for expenditures for trial witnesses and for deposition witnesses, fees and expenses for pre-trial consultation with expert witnesses, transcripts of trial testimony and transcripts of depositions.[26]

■ It is apparent that many of these expenses fall within the compass of the costs statute and have already been considered in the court's assessment of costs. The court's strong preference is to give effect to section 1920 by looking to the statute as the exclusive means of recovering those basic categories of costs included in it. *Copper Liquor III,* 684 F.2d at 1101; Bartell, *supra* note 24, at 714. For this reason, no allowance will be made for the fees of the United States Marshal, expenditures for trial witnesses, transcripts of trial testimony and transcripts of depositions.[27]

In the aftermath of the Cork casualty, counsel for the parties traveled to Europe to conduct a number of depositions noticed by the defendants. The parties shared the fees and expenses of the deponents with "[r]eimbursement ... to abide final judicial determination of who is to bear these burdens." Minute entry, July 23, 1976, record document 100. Auto now presents a claim for the balance of the fees and expenses

---

**26.** There is considerable overlap between the all-inclusive disbursement records of Mr. Mooney and Chaffe McCall (Hearing Exhibits A–4, A–5, A–6, and N) and the expenses in Hearing Exhibits B through H, and N discussed in Auto's Reply to Submissions on Remand at 30–42. Counsel states that the duplication has been eliminated. Supplement A to Exhibit A purports to make deductions to the disbursement records for deposition transcripts, attorney airfare and travel expenses to and from New Orleans, advances for expenses and expert fees.

**27.** The court taxed as costs witness fees, subsistence and travel allowances for eight trial witnesses. Fees for Witnesses, *supra,* at 35. In Exhibits B, C and F, Auto claims witness fees and travel, hotel and meal expenses for the same eight witnesses over and above the amounts claimed as costs. With the exception of expert fees, all of these expenses fall within the purview of section 1821. We decline to exceed the statutory allowances and make no award for the expenditures detailed in Exhibits B, C and F.

We acknowledge that Auto's Bill of Costs did not include a claim for the fees of the expert witnesses whereas Exhibit B does constitute a request for reimbursement for such fees. As a general rule, expert witnesses may be allowed only the fees allowed fact witnesses, as prescribed by section 1821. *Copper Liquor III,* 684 F.2d at 1100. To the court's knowledge, this rule has always been followed in this district.

The Fifth Circuit, however, has recently held that 28 U.S.C. § 1920 should not govern the award of expert witness fees; rather, such sums may be awarded as part of a reasonable attorney's fee. *Greenhaw v. Lubbock County Beverage Ass'n,* 721 F.2d 1019, 1033 (5th Cir.1983), *citing Copper Liquor III,* 684 F.2d at 1100. The trial court has discretion, in exceptional circumstances, to award experts their full fee. *Copper Liquor III,* 684 F.2d at 1100. Such circumstances include cases where the expert testimony was necessary or helpful to the presentation of civil rights claims or indispensable to the determination of the case. *Id.* No matter what the circumstances, the better practice is to seek court approval for an allowance of expert witness fees. *Id.* This is not a civil rights case and counsel did not obtain prior court approval for an allowance for experts in excess of the fee allowed for fact witnesses. The court is aware that it found the circumstances justified taxing these witnesses' travel expenses beyond the 100-mile limit. Travel expenses were modest in comparison with the expert fees sought. We take, as our guide, the Supreme Court's injunction to exercise our discretion sparingly "with reference to expenses not specifically allowed by statute" and make no award for expert witness fees.

Also included in Auto's litigation expenses are $6,319.45 for transcripts of trial testimony and $5,747.67 for transcripts of depositions. These are precisely the amounts sought for these items in Auto's Bill of Costs. All of these expenses were considered in the taxation of costs and we reiterate our intention to give effect to the statute as the exclusive means of recovery for those categories of expenses it covers. We make no further allowance for these items as expenses of litigation.

paid the witnesses. *See* Exhibit D, Auto's Reply to Submissions on Remand, at 34.

■ Witness fees are an element of costs to be taxed in accordance with the allowances prescribed in 28 U.S.C. § 1821. Witnesses who attend a deposition are treated to the same allowances as trial witnesses. 28 U.S.C. § 1821. For reasons not known to the court, Auto did not claim these expenses as costs. Consistent with our view that expenses within the purview of the costs statute should be recovered exclusively by means of the statutory vehicle, we decline to bring these costs in the back door as "litigation expenses." [28]

■ Auto has also made claim for fees and expenses for pre-trial consultation with three of its expert witnesses on the basis that the consultation was "necessary in the conduct of litigation and should be recoverable as litigation expenses." The court finds no authority for this novel proposition. Undoubtedly pre-trial consultation with one's expert witnesses is necessary and helpful preparation for litigation. These expenses seem to fall into a putative category of litigation expenses we might call "expenses of trial preparation", a category so elastic and foreign to the principles of the costs statute that it approaches the English rule. *Farmer* bids us not to reimburse a winning litigant for every expense incurred in the conduct of his case. 379 U.S. at 235, 85 S.Ct. at 416. In the exercise of our discretion we make no award for these consultation fees. *Kohle,* 713 F.2d at 132.

To this point, we have made no award for the expenses of litigation claimed by Auto. We turn now to a consideration of the remaining items listed in counsel for Auto's disbursement records.[29] With respect to those costs not specifically allowed by statute, the court exercises its discretion sparingly. *Kohle,* 713 F.2d at 132, *citing Farmer* 379 U.S. at 235, 85 S.Ct. at 416. There comes a point at which a prevailing party and its counsel must absorb some of their own costs. *Loewen v. Turnipseed,* 505 F.Supp. 512, 517 (N.D.Miss.1980). *See Farmer,* 379 U.S. at 235, 85 S.Ct. at 416.

■ The court has examined counsels' records closely and has determined that the major portion of the expenses sought will not be allowed. Expenses for meals and hotels, to the extent they have not already been removed, are disallowed. Expenses for clerical overtime, postage and special courier services are generally considered overhead, part of the cost of operating a law firm, and are disallowed. *See Loewen,* 505 F.Supp. at 518.

■ The records reflect sizable travel expenses, primarily Mr. Mooney's, for travel in this country and abroad to meet with witnesses and in connection with the taking of depositions. In the absence of prior court approval or extraordinary circumstances, travel expenses incurred by an attorney for depositions and interviews are not taxable as costs. *U.S. v. Bexar Coun-*

---

**28.** We have other grounds for excluding these expenses from the award. In the first instance, we find that these depositions were taken for discovery purposes and, as such, the related expenses are not taxable as costs. *See Bartell, supra* note 24 at 689. Further, the amount claimed includes expert fees for five of the witnesses. We have already determined not to award fees to expert witnesses who testified at trial and we adhere to that decision with respect to deposition witnesses. The depositions, particularly those of Middlemiss, Higgins and Warnkross, also had a great deal to do with Cork and Auto was not successful on that claim. *See Shevin v. Lederman,* 92 F.R.D. 752 (D.Colo. 1981).

In sum, these expenses have been claimed as litigation expenses and their allowance falls

within the discretion of the court. The parties have already divided up the expenses incurred in connection with these depositions and in light of the foregoing, the court is loath to place the entire burden on the defendants. No award will be made for these expenses.

**29.** Mr. Mooney has already eliminated from the disbursement records amounts expended for deposition transcripts, attorney travel expenses to and from New Orleans, advances for expenses, and expert fees. *See* Supplement A to Exhibit A. Chaffe McCall has removed from its claim payments for trial and deposition transcripts and certain entertainment expenses. *See,* Auto's Reply to Submissions on Remand, at 42.

*ty*, 89 F.R.D. 391, 394 n. 5 (W.D.Tex.1981). Auto neither sought nor obtained prior court approval for these expenses. The travel expenses were not incurred under extraordinary circumstances and the court has been presented with no compelling reason to order defendants to bear these expenses. We, therefore, decline to allow such expenses as litigation expenses in this case. *Cf. Loewen*, 505 F.Supp. at 518.

 Finally, we will not order defendants to reimburse Auto for the cost of communication between the site of this litigation, New Orleans, and the home city of its lead counsel, New York. Charges for special courier services and postage between the two cities, already disallowed as overhead, are disallowed for the additional reason that these communication costs were made necessary by Auto's choice of counsel. All long-distance telephone charges between New York and New Orleans are likewise attributable to the convenience of counsel and to Auto's decision to engage dual representation and are disallowed.

 Disbursements for other long-distance calls, cables, translation, photocopying and photographic expenses are allowed.[30] *See Loewen*, 505 F.Supp. at 518–19. These expenses are of the type customarily billed to a fee-paying client and the court, after a review of counsels' records, is of the opinion that these expenses were reasonably and necessarily incurred in the following amounts:

| | |
|---|---|
| Mooney | $4,464.00 |
| Chaffe McCall | 3,040.00 |

We make one final reduction for Cork-related disbursements. At the hearing, Mr. Mooney agreed to withdraw $1000 in disbursements as Cork-related. Undoubtedly, this figure included amounts disallowed

above. We, therefore, reduce the award of litigation expenses to account for Cork by the same percentage (15%) by which Mr. Mooney's fees were reduced. Chaffe McCall has made no estimate of the amount of Cork-related disbursements reflected in its records. Chaffe McCall's fee award was reduced by 10%; the award of litigation expenses will bear the same reduction.

Thus, in addition to the fees and costs awarded as calculated above, counsel for Auto are entitled to litigation expenses in the following amounts:

| | | |
|---|---|---|
| Mooney | $4,464.00 × (.85) = | $3,794.40 |
| Chaffe McCall | 3,040.00 × (.90) = | 2,736.00 |
| Total | | $6,530.40 |

## D. ALLOCATION OF THE AWARD AMONG THE DEFENDANTS:

 Having determined the amount of fees, costs and expenses due Auto from the defendants, the next issue we confront is whether to adopt defendants' suggested apportionment of this obligation in accordance with the damages allocated above.[31] The decision to make such an allocation is a matter within the discretion of the district court. *Copper Liquor III*, 684 F.2d at 1101; *Riddell v. National Democratic Party*, 712 F.2d 165, 168–69 (5th Cir.1983).

Two questions are involved here. The first concerns the effect of the red-letter clause. Todd, having been held liable for damages up to the $300,000 limit of the clause, contends that it has no further obligation to contribute to the fee award. The second question is whether to apportion liability among the defendants in accordance with the allocation of damages award or simply to hold them liable *in solido*.

### 1. *The Effect of the Red-Letter Clause*

 Todd contends that any fees for Auto are damages of a consequential na-

---

**30.** Translation of the ship's logs offered into evidence was requested by the court. We find 22 hours to be the amount of time reasonably and necessarily incurred in the work of translation and allow $440.00 for this expense. *See Kohle*, 713 F.2d at 133.

**31.** The court is not altogether convinced it need decide this issue but given the size of the award and the parties' apparent addiction to litigation, we will address the defendants' arguments on this subject.

ture and thus excluded by the red-letter clause in the repair contract. Todd calls the court's attention to the portion of the red-letter clause which provides as follows:

"In no event shall we [Todd] be liable for the cost of defense including attorneys' fees, of any action whether commenced by our employees, subcontractors' employees, or others against the vessel, its owner, agents, charterers or underwriters."

This disavowal of liability follows immediately after a paragraph disclaiming liability for personal injury, damage to property of third parties, and pollution damages unless due to the sole negligence of Todd's own employees.[32]

By its language, the clause does not unambiguously rule out Todd's liability for the cost of defense of all actions. In the court's view, the clause contemplates limiting liability only for particular classes of actions, namely personal injury suits, wage claims or other actions arising out of employment or services supplied the vessel. The clause, by its very terms, applies only to actions commenced against the vessel, its owners and others involved in its operation.

The true nature of this litigation, however, is an action by the vessel's owners to recover for damages to their ship KATRIN. *Todd*, 467 F.Supp. at 1269. Although Turbine Service made a claim against the vessel to recover on its unpaid repair invoices, and Gonzales counterclaimed against the vessel for the same reason, this does not alter the essential character of this action nor bring it within the red-letter clause's express exclusion of attorneys' fees for certain kinds of actions.

General principles of contractual construction also dictate that the exclusionary language, if ambiguous, be construed against the party responsible for its drafting. This is an action by the vessel's owners against Todd and its subcontractors for negligent repair of the ship's turbine and the consequential damages flowing therefrom. The contractual language does not specifically exclude Todd's liability for the cost of defense of a case of this nature. Indeed, the exclusionary clause appears to cover actions of an entirely different variety. Thus, the red-letter clause cannot be construed to limit Todd's liability for attorney's fees and costs in this matter.

### 2. *Allocation of the Fee Award Among the Defendants*

Todd, Sentry and Travelers have each asked the court to apportion any fee award in accordance with the allocation of damages against them. The trio has cited no authority for any such action and the court is not inclined to adopt any of the several methods of apportionment suggested by the parties. Travelers and Sentry seek to be excused from liability for a fraction of the fee award based on the amount of damage excluded from coverage under their policies. The insureds, however, left their defense in the hands of Travelers and Sentry. On appeal and remand, the insurers succeeded in excluding a relatively small fraction of the total damages from coverage under their policies.[33] The insur-

---

**32.** The red-letter clause is set out in full in the court's original opinion, 467 F.Supp. at 1270 n. 4. The first paragraph read as follows:

"We contract for vessel repair and drydocking and other services only upon the basis of insured limited liabilities as set forth below. In no event shall our liability for any claim exceed in the aggregate the sum of $300,-000.00."

Had Todd acknowledged its liability and litigation been avoided, there would have been no need to award pre-judgment interest to Auto. The award of pre-judgment interest, of course, compensates a party for the loss of use of funds to which it was lawfully entitled. It would be inequitable to permit a party to limit its liability in the first instance and, thereafter, to enforce the limitation of liability to deny recovery for pre-judgment interest. By the same token, the red-letter clause limit is ineffective to deny Auto recovery for the reasonable attorney's fees it incurred in enforcing its right of recovery. *See Alcoa Steamship Company v. Charles Ferran & Co.*, 443 F.2d 250, 254 (5th Cir.1971).

**33.** We take note of the parting of company between the insurers and the insureds on appeal. *Todd*, 674 F.2d at 421. Gonzales claims in its post-appeal (remand) submission that Sentry did a complete volte-face on appeal and

ers will have to be satisfied with the degree of success they achieved in proving the policy exclusions. The court will not also reduce their liability for fees.

■ Having failed to convince the court that its liability for attorneys fees is capped by the $300,000 limit of the red-letter clause, Todd now suggests that its share of the fee award stand in the same ratio to the total fee award as $300,000 bears to the total damage award of $820,633.29. The court originally found the defendants to be liable *in solido*. This assessment of liability was affirmed by the Fifth Circuit and the court will adhere to its original decision. The court concludes that the defendants are liable *in solido* for the award of fees, expenses and costs. *See Riddell,* 712 F.2d at 168–69.[34]

## E. AUTO'S CLAIM FOR FEES FOR WORK ON APPEAL AND REMAND

Auto also seeks to recover fees and disbursements incurred in connection with the appeal and remand of this matter. In its Reply to Submissions on Remand, Auto lists ten categories of work on appeal, and an additional category relating to the claim for attorneys' fees.[35] Auto asks the court to take judicial notice of the appellate proceedings and assess a reasonable allowance for fees and disbursements.

Neither Mr. Mooney nor Chaffe McCall have submitted any time records or other documentation in support of this portion of their claim. Instead, they have presented the court with a bald statement of time spent, fees earned and disbursements made. Mr. Mooney claims his time records reflect more than 500 additional hours of work generating fees in excess of $55,000 with disbursements in excess of $7,000. Chaffe McCall states its records reflect additional fees in excess of $20,000 and disbursements in excess of $3,500. Auto appears to have added these amounts together and made a substantial deduction for work on the unsuccessful Cork claim. The Cork deduction reduces Auto's claim for additional fees and disbursements to $50,000.

■ While the court has no doubt that Auto's counsel devoted considerable time to the appellate proceedings and incurred expenses in the course of the appeal, the summary fashion in which this claim has been presented to the court makes meaningful review well-nigh impossible. Although time sheets are not an indispensable requirement for an award of attorney's fees, the failure to provide the court with complete information needlessly complicates its task and may lead to the denial of an award in all or in part. *Copper Liquor III,* 684 F.2d at 1094.

---

attempted to avoid all responsibility for coverage under the policy. In a matter not before the court, Gonzales seeks to recover attorneys' fees from Sentry for this conduct.

34. Todd also claims that it is entitled to indemnity for any award of fees for which it is liable. It seeks indemnification from Turbine Service and Gonzales based on its recovery of full indemnification for custodial invoices in the amount of $99,647.00. As the Fifth Circuit recognized, Auto proved Todd's entitlement to indemnification in the course of putting on its own case. Todd called no witnesses or experts on its own behalf. The Fifth Circuit specifically stated that Todd's right to indemnity did not include indemnification for any liability for attorneys' fees. *Todd,* 674 F.2d at 407.

35. The eleven areas are:
a) defendants' motion to strike Auto's cross-appeal (denied by the Fifth Circuit);

b) preparation of a motion to compel defendants to include testimony in the record on appeal;
c) responses to a half dozen applications or motions by defendants to stay appeal or extend time;
d) preparation of motion to expedite hearing of appeal in view of extended delays (granted);
e) studying the defendants eight appellate briefs;
f) preparing Auto's 111-page appellate brief;
g) argument before the Fifth Circuit;
h) studying Sentry, Travelers, and Gonzales briefs for rehearing;
i) studying Sentry, Travelers, and Gonzales briefs for rehearing en banc;
j) studying and responding to applications of Sentry and Travelers for stays of the mandate in the Court of Appeals and United States Supreme Court; and
k) briefing, hearing and submissions on attorneys' fees.

■ In the court's view, the number of hours reasonably expended for work on remand is 150. We base this figure on an assessment of Auto's post-trial submissions to this court. The record shows counsel for Auto's work on remand to have included the preparation of two briefs, one of which ran to 59 pages, correspondence with the court on the form of the judgment and a number of submissions in connection with the application for an award of fees and costs. The number of hours reasonably expended for appellate work is 50. Undoubtedly, the actual time expended was greater. Auto has, however, presented nothing to substantiate its claim for work on appeal and the appellate record is not in our possession. In the absence of any evidence to substantiate a claim for a greater expenditure of time, the court will make no award over and above what it considers to be the bare minimum amount of time attorneys of the caliber of Auto's counsel would devote to appellate preparation in a case of this magnitude. *See Hensley*, 103 S.Ct. at 1942 n. 13.

We arrive at a lodestar figure by multiplying the total number of hours reasonably expended by an hourly rate the court has concluded represents reasonable and adequate compensation for the services rendered. We set this rate at $70 per hour.[36] We have further considered the additional *Johnson* factors and determined that no adjustment to the lodestar is warranted.

Since the court is unable to discern the particular purpose of any of the disbursements made by Mr. Mooney, the claim for these expenditures is denied in its entirety. Chaffe McCall has documented $412.91 in expenses from February 1, 1979 to July 16, 1979. We award $167.00 for reproduction and telex expenses only. The remainder is disallowed for the reasons set forth above

in connection with the consideration of counsel for Auto's principal claim for expenses. The remaining expenses are undocumented and are denied in their entirety.

F. INTEREST ON THE AWARD

■ Interest on the fees, expenses, and costs awarded in this case runs from the date of the judgment making the award. *Copper Liquor, Inc. v. Adolph Coors Co.*, 701 F.2d 542 (5th Cir.1983) (*Copper Liquor IV*). In this case, the date of the original judgment awarding fees and costs to Auto is November 14, 1978.

■ Auto has made its usual argument about the high interest rates prevailing in the years since the original judgment. Auto, again, has offered no evidence that it actually did any borrowing at these interest rates. We note also that the defendants claim Auto has received reimbursement from its insurers for payments to its counsel. At any rate, the court declines to adopt Auto's recommended 17% interest rate. Post-judgment interest is governed by statute. 28 U.S.C. § 1961. We give effect to the statute and order interest on the award to be calculated in accordance with its express terms. *Copper Liquor IV*, 701 F.2d at 542 n. 1. Interest on the fees and expenses awarded for work on appeal and remand will run from the date of the judgment on remand. *Id.* at 545.

### III. RECAPITULATION OF AWARD

A. Attorneys' Fees:

| | | | |
|---|---|---|---|
| 1. | Mooney | $139,987.50 | |
| 2. | Chaffe McCall | 51,059.00 | |
| | Subtotal | | $191,046.50 |

B. Costs: | | 14,321.10

C. Expenses:

| | | | |
|---|---|---|---|
| 1. | Mooney | 3,794.40 | |
| 2. | Chaffe McCall | 2,736.00 | |
| | Subtotal | | 6,530.00 |
| | TOTAL | | $211,897.60 |

---

36. This figure is arrived at by taking the reasonable hourly rate awarded Mr. Mooney for his post-trial work ($75 per hour) and reducing this figure to account for the lower billing rates commanded by Chaffe McCall's attorneys ($60 per hour for partners; $40 per hour for associates). Since Mr. Mooney invested more time than Chaffe McCall in this work, the rate fixed is set substantially closer to Mr. Mooney's reasonable hourly rate.

Award for Appeal and Remand

Attorneys' Fees:

Mooney, Chaffe McCall
200 hours x $70 per hour = $14,000.00

Expenses:

Chaffe McCall = 167.00

TOTAL $14,167.00

## CONCLUSION

In all probability, our decision will be totally satisfactory to no one. *See Johnson,* 488 F.2d at 720. We have, however, made every effort to reach a fair and reasonable fee award in the fervent desire to see the end of this litigation. This private dispute has already gone on too long and consumed too many precious judicial resources. A request for attorneys' fees should not result in a second major litigation. *Hensley,* 103 S.Ct. at 1941.

The goal of all members of the federal bench is to secure the just, speedy and inexpensive determination of every action. *See* F.R.Civ.P. 1. The latter two objectives fell by the wayside long ago in this case. The court can at least do justice to this matter and put it to rest.

Accordingly,

IT IS ORDERED that there be recovery between and among the parties in accordance with the amounts and allocations set forth in Section I(C) above.

IT IS FURTHER ORDERED that Auto recover from Todd, Turbine Service, Gonzales, Travelers and Sentry, *in solido,* its fees, costs and expenses as set forth in the recapitulation above.

Judgment to be entered accordingly.